COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-281-CR

EDWARD COMPTON APPELLANT

A/K/A EDWARD JACKSON

V.

THE STATE OF TEXAS STATE

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury convicted Appellant Edward Compton a/k/a Edward Jackson of murder and assessed his punishment at twenty-five years’ confinement.  In nine points, Compton argues that there was a fatal variance between the allegations in the indictment and the evidence presented at trial; that the evidence is legally and factually insufficient to show that he intentionally or knowingly committed murder, that he committed an act clearly dangerous to human life, and that he caused the death of the victim; and that the trial court erred by refusing to instruct the jury on the offense of criminally negligent homicide and by failing to sua sponte include a jury charge instruction at punishment on sudden passion.  We will affirm.

II.  Factual and Procedural Background

During the early morning hours of June 7, 2000, Cassandra Calhoun, who worked with Raj Ramsinghani at a liquor store in Gainesville, went to Ramsinghani’s small apartment after work to help him hook up a new VCR. Compton, who had lived with Calhoun on and off for a few years and considered her to be his common law wife, showed up at Ramsinghani’s apartment shortly thereafter looking for Calhoun and intending that she leave with him.  After Ramsinghani answered Compton’s knock on the front door, Calhoun, who was sitting on a bedroom floor, heard Compton yelling and saw him “swinging with his fists” and “hitting” Ramsinghani.  Ramsinghani did not swing back at Compton; he put his hands up in an attempt to defend himself from Compton’s blows.  As the altercation progressed, Compton and Ramsinghani moved towards the bedroom and a bathroom just before Compton pushed Ramsinghani, causing him to fall backwards into the bathroom and strike the back of his head on an unknown object.  Calhoun did not see Ramsinghani hit the floor or the object that his head contacted while falling to the floor, but she heard a noise that sounded like Ramsinghani hit the wall or some other object.  After Ramsinghani fell to the floor, Compton bent over and struck Ramsinghani’s face multiple times with his fists as Calhoun screamed at him to stop.  Compton stopped hitting Ramsinghani, noticed that there was blood coming out of Ramsinghani’s ears, and left the apartment before police arrived.

The incident left Ramsinghani in a coma with contusions and bruises on his face and a fracture to the rear base of his skull that caused a subdural and subarachnoid hemorrhage.  He died ten days later in a Fort Worth hospital.  The medical examiner listed Ramsinghani’s cause of death as craniocerebral trauma due to blunt force injury of the head—an injury consistent with Ramsinghani’s head moving at a rapid pace before contacting a hard surface.

The State subsequently indicted Compton for murder, alleging that Compton either intentionally or knowingly caused Ramsinghani’s death or that, with intent to cause serious bodily injury, he committed an act clearly dangerous to human life that caused Ramsinghani’s death.  At trial, an investigator testified that his office was unable to determine the object that Ramsinghani’s head struck as he fell to the floor.  A police officer testified that he responded to a call at Ramsinghani’s address about one month before the June 7, 2000 incident because Compton had been knocking on Ramsinghani’s door, had broken one of the apartment’s windows, and was intoxicated.  The officer arrested Compton.  Compton testified that he entered the apartment and pushed Ramsinghani off of him when Ramsinghani “grabbed” him.  Compton agreed that he pushed Ramsinghani, that Ramsinghani hit his head on an object, and that Ramsinghani died.  The jury ultimately convicted Compton of murder, and this appeal followed.

III.  Variance and Sufficiency Arguments

Compton challenges the sufficiency of the evidence to support his murder conviction.  Specifically, in his first point, Compton argues that a fatal variance between the allegations in the indictment and the proof presented at trial rendered the evidence insufficient to support his conviction.  
In his fourth and fifth points, Compton argues that the evidence is legally and factually insufficient to show that he murdered Ramsinghani by 
committing an act clearly dangerous to human life
.  And in his sixth and seventh points, Compton argues that the evidence is legally and factually insufficient to show that his actions caused Ramsinghani’s death. 
 Because our legal sufficiency analysis is affected by our determination of Compton’s fatal variance argument, we initially consider his first point.

A. Fatal Variance

Compton argues that a fatal variance existed between the indictment and the proof at trial because the evidence showed that he caused Ramsinghani to fall to the floor and strike his head on an unknown object when he 
pushed 
Ramsinghani instead of when he 
hit Ramsinghani in the head with his hands
, as the indictment alleges.

A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial.  
Gollihar v. State
, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001).  In a variance situation, the State proves the defendant guilty of a crime, but proves the crime’s commission in a manner that differs from the allegations in the charging instrument.  
Id
.  
Not all variances are fatal (or “material”), however.  A variance between the wording of an indictment and the evidence presented at trial is fatal only if it is material and prejudices the defendant’s substantial rights.
  
Gollihar
, 46 S.W.3d at 257; 
see also 
Fuller v. State
, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002).  In reviewing the materiality of such a variance, we must determine whether the variance deprived the defendant of notice of the charges and whether the variance subjects the defendant to the risk of being prosecuted later for the same crime.  
Fuller
, 73 S.W.3d at 253; 
Gollihar
, 46 S.W.3d at
 257.  A variance claim raises a legal sufficiency point.  
Gollihar
, 46 S.W.3d at 247 & n.6.  Allegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge, but allegations giving rise to material variances must be included.  
Id
. at 257.

Here, the indictment alleged that Compton committed murder in two alternative methods.  It states as follows:

[Compton] did then and there intentionally or knowingly cause the death of an individual, Rajkumar Ramsinghani, by 
striking the said Rajkumar Ramsinghani in the head with the defendant’s hands and by causing the said Rajkumar Ramsinghani’s head to strike an object 
unknown to the Grand Jury.

And the grand jurors aforesaid . . . do further present in and to said Court that . . . [Compton] did then and there with intent to cause serious bodily injury to an individual, namely Rajkumar Ramsinghani, commit an act clearly dangerous to human life, to-wit: did then and there 
strike the said Rajkumar Ramshinghani in the head with the defendant’s hands and cause the said Rajkumar Ramshinghani’s head to strike an object 
unknown to the Grand Jury, that caused the death of the said Rajkumar Ramsinghani. [Emphasis added.]

Part of the jury charge tracked the language in the indictment and stated as follows:

Now, bearing in mind the foregoing definitions and instructions, if you find from the evidence beyond a reasonable doubt that on or about June 7, 2000 in Cooke County, Texas, the defendant, Edward Compton, did then and there either (1) intentionally or knowingly cause the death of an individual, Rajkumar Ramsinghani, by striking him in the head with the defendant’s hands and by causing his head to strike an unknown object, or (2) with the intent to cause serious bodily injury to an individual, Rajkumar Ramsinghani, commit an act clearly dangerous to human life, to wit: strike Ramsinghani in the head with the defendant’s hands and cause his head to strike an unknown object, that caused the death of Ramsinghani, you will find the defendant guilty of murder as charged in the indictment and so say by your verdict.

The evidence demonstrates that Calhoun and Compton were the only two individuals who were at Ramsinghani’s apartment on June 7, 2000, and who testified regarding the events that transpired that night.  Calhoun testified that Ramsinghani “fell” when Compton was “hitting” Ramsinghani.  On cross-examination, however, Calhoun agreed that she stated in her statement to police that she observed Compton “push” Ramsinghani, causing him to fall to the floor.  Calhoun recounted in her statement that Compton “pushed [Ramsinghani] into the back” and “pushed him down.”  Compton testified that Ramsinghani grabbed him and that he “pushed” Ramsinghani, causing him to fall.  There is evidence that Compton struck Ramsinghani before and after Ramsinghani fell to the floor, but our review of the record does not reveal any evidence that it was Compton’s striking of Ramsinghani in the head that caused Ramsinghani to fall backwards and strike his head on an unknown object.  Rather, most, if not all, of the evidence showed that Ramsinghani fell backwards and struck his head on an unknown object when Compton pushed him.  We thus agree with Compton that a variance exists between the allegations in the indictment and the evidence presented at trial.

Compton argues that the variance is material because he caused Ramsinghani to strike his head when Compton’s hands contacted Ramsinghani’s body through the motion of a push rather than when his hands contacted Ramsinghani’s head by way of a striking motion.  
The indictment does not allege that Compton caused Ramsinghani’s death by striking him in the head with his hands.  Instead, Ramsinghani’s death was alleged to have been caused when his head struck an unknown object—a result initiated and caused by Compton’s intentional, knowing, or clearly dangerous to human life action 
of striking Ramsinghani’s head.  Whether a person strikes an individual in the head with his hands or pushes an individual with his hands, the person 
makes contact with the body of the individual being struck
 or pushed.  In both instances, contact with the body of the individual being struck or pushed results in a certain amount of force being exerted upon that person’s body, albeit in a different manner.  And under normal circumstances, the force in turn exerted upon the individual causes a result—falling backward, bleeding, bruising, or some other physiological response.

In this case, we cannot say that the indictment failed to give Compton notice that he was being charged with the offense of murder because the evidence at trial demonstrated that the force exerted by Compton upon Ramsinghani’s body causing him to strike his head and die resulted from 
the motion of a push
 rather than from a 
strike to the head.
  In each instance, it was Compton’s action of contacting Ramsinghani’s body with his hands that caused Ramsinghani to strike his head on an unknown object and die.
  
The record as a whole demonstrates that Compton was sufficiently informed of the charges against him so that he could present an adequate defense
; his defense counsel extensively cross-examined the State’s witnesses and argued on his behalf throughout the trial.  Compton also does not run the risk of being prosecuted again for the June 7, 2000 murder of Ramsinghani.  
Accordingly, we hold that the variance 
between the allegations in the indictment and the proof presented at trial 
was not material.  
See Fuller
, 73 S.W.3d at 253; 
Gollihar
, 46 S.W.3d at
 257.  
Consequently, we will disregard the immaterial variance in conducting our evidentiary sufficiency analysis under the hypothetically correct jury charge.  
See Gollihar
, 46 S.W.3d at 257.  We overrule Compton’s first point.

B. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Clayton v. State
, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Clayton
, 2007 WL 2937093, at *4.

The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  Instead, we “determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.”  
Hooper v. State
, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).  We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.  
Jackson
, 443 U.S. at 326, 99 S. Ct. at 2793; 
Clayton
, 2007 WL 2937093, at *4.

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case.  
Malik v. State
, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); 
Bowden v. State
, 166 S.W.3d 466, 470 (Tex. App.—Fort Worth 2005, pet. ref’d).  Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State’s theories of liability, and adequately describes the particular offense for which the defendant was tried.  
Gollihar
, 46 S.W.3d at 253; 
Malik, 
953 S.W.2d at 240.  The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument.  
See Curry v. State
, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 204 S.W.3d at 414–15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the 
verdict.  
Watson
, 204 S.W.3d at 417.
  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

C. Legally and Factually Sufficient Evidence of Murder

A person commits murder if he (1) intends to cause serious bodily injury and (2) commits an act clearly dangerous to human life that (3) causes the death of an individual.  
Tex. Penal Code Ann.
 § 19.02(b)(2) (Vernon 2003)
.  Intent to kill is not required to commit murder under section 19.02(b)(2).  
Ramirez v. State
, 229 S.W.3d 725, 729 (Tex. App.—San Antonio 2007, no pet.).
  Rather, there must be an intent to cause serious bodily injury to the individual whose death results from an act clearly dangerous to human life.  
Id
.; 
see also Ortiz v. State
, 651 S.W.2d 764 (Tex. Crim. App. 1983).

Compton’s 
argument challenging the sufficiency of the evidence to support his section 19.02(b)(2) murder conviction is limited to whether he committed an act clearly dangerous to human life that caused Ramsinghani’s death.  
Compton does not argue that the evidence is legally and factually insufficient to show that he intended to cause Ramsinghani serious bodily injury.  We therefore do not analyze whether there is sufficient evidence demonstrating that Compton intended to cause Ramsinghani serious bodily injury.  
See 
Tex. R. App. P.
 47.1;
 Lugo-Lugo v. State
, 650 S.W.2d 72, 81 (Tex. Crim. App. 1983) (“The second element of prosecution under section 19.02(b)(2) requires a showing that the individual commits an act clearly dangerous to human life . . . .”);
 Garza v. State
, 974 S.W.2d 251, 254 (Tex. App.—San Antonio 1998, pet. ref’d) (considering sufficiency of evidence in support of murder conviction under section 19.02(b)(2) and stating that “[t]he only element of this offense that is in dispute is whether Garza intended to cause serious bodily injury”); 
Nickerson v. State
, No. 02-04-00180-CR, 2005 WL 1356440, at *11–12 (Tex. App.—Fort Worth June 9, 2005, pet ref’d) (mem. op.) (not designated for publication) (considering sufficiency of the evidence to support the separately challenged elements of (1) whether appellant intended to cause serious bodily injury and (2) whether appellant committed an act clearly dangerous to human life).

An act clearly dangerous to human life is one that creates a substantial risk of death.  
Depauw v. State
, 658 S.W.2d 628, 634 (Tex. App.—Amarillo 1983, pet. ref’d).  The test for determining whether an act is clearly dangerous to human life is an objective one.  
Lugo-Lugo
, 650 S.W.2d at 81.  We thus do not consider whether the defendant subjectively knew that his acts were clearly  dangerous to human life; rather, we focus on whether the acts themselves were clearly dangerous to human life.  
Rogers v. State
, No. 05-92-00507-CR, 1994 WL 121055, at *3 (Tex. App.—Dallas Apr. 4, 1994, no pet.) (not designated for publication).

Here, the evidence shows that the incident took place in Ramsinghani’s apartment.  Witnesses described the apartment as “rather small,” resembling an efficiency or economy apartment
.  
After Compton had entered the apartment, Calhoun overheard Compton telling Ramsinghani that he was going to kill him before Compton began beating Ramsinghani with his fists, forcing Ramsinghani to the rear of the apartment. 
 Once in the bedroom and near the entrance to the bathroom, Compton pushed Ramsinghani, causing Ramsinghani to fall and strike his head on an unknown object.

Marc Krause, the medical examiner who performed Ramsinghani’s autopsy, identified Ramsinghani’s cause of death as craniocerebral trauma, describing it as “traumatic or physical injury of the brain and head due to blunt force injury to the head.”  Dr. Krause agreed that the injury was consistent with having been pushed “with such great force backwards.”  Elaborating on cross-examination, Dr. Krause testified that a person’s head travels at least 1.7 times the normal gravitational acceleration when falling backwards, “particularly if there’s some force added to that acceleration.”  He explained that craniocerebral trauma may result because, “[w]hen a moving head hits a hard surface, particularly the back of somebody’s head . . . , the brain continues to move inside the skull until it flaks against the inside of the skull.”  According to Dr. Krause, in such a situation, “[t]he greatest brain injury occurs on the complete opposite side from the impact point,” which is what happened in this case.

Bill Morgan, a trauma surgeon in Fort Worth who treated Ramsinghani, testified that Ramsinghani arrived at the hospital with swelling and contusions around his face and blood coming out of his ear canals—a sign of a basilar skull fracture.  Dr. Morgan testified that Ramsinghani’s skull fracture “would have been the result of his head moving at some 
rapid pace 
and then hitting some sort of hard surface, probably a fixed object of some type.”  [Emphasis added.] Dr. Morgan reasoned that the amount of force required to cause the type of injury sustained by Ramsinghani was greater than that exerted by someone who simply falls on the floor.  The following exchange took place:

[Defense counsel]: But you have seen people where they’ve just fallen on the floor [with] no force whatsoever and have this type of injury, haven’t you?

 [Dr. Morgan]: Not with the extents of - - the extent of the skull fracture.  I have seen the intracranial bruising, yes, sir, but not the skull fracture.

Indeed, in response to the State’s question as to whether “exerting that type of force against another person with objects around that they might hit is reasonably certain to result in death or serious bodily injury,” Dr. Morgan reasoned that such a result is “probably more than a 50 percent likelihood.”  Dr. Morgan also testified that Ramsinghani “had both the subdural and the subarachnoid hemorrhage, which is evidence of the fact that whatever the injury producing mechanism was, 
it was of significant enough amount of force 
to cause blood under both of those layers of” the lining around the brain. [Emphasis added.]  The experts’ testimony thus demonstrates that the extent of brain trauma experienced by a falling person whose head contacts a hard object is proportional to the amount of force initiated upon that person when pushed
.

Compton testified that he was not aware that Ramsinghani was going to fall if he pushed him and that 
he intended to “get [Ramsinghani] off of [him],” not that he intended to push him hard enough to make him fall.  Compton also points to evidence that Ramsinghani had consumed alcohol on the night that he was killed and that it is possible that he “fell after being pushed as a result of being unsteady because of his alcohol consumption rather than as a result of the force used by Appellant.”  
As the judge of the credibility of the witnesses, however, the jury was free to believe or disbelieve part or all of the witnesses’ testimony, including Compton’s testimony, which it disbelieved.
  See Chambers v. State
, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The evidence does not show that Compton pushed Ramsinghani with such a small amount of force that the push was not clearly dangerous to Ramsinghani’s life.  Rather, the evidence demonstrates that 
Compton was overheard telling Ramsinghani that he was going to kill him and that he committed an act clearly dangerous to human life when he pushed Ramsinghani in the small apartment with such force that there was more than a fifty percent chance that Ramsinghani was reasonably certain to suffer serious bodily injury or die when his head contacted the wall, the floor, or some other object.  
See 
Tex. Penal Code Ann.
 § 19.02(b)(2).  Compton even agreed on cross-examination that he pushed Ramshinghani “hard” and that the push caused Ramsinghani to fall. 
 V
iewing the evidence in the light most favorable to the verdict and 
measuring the challenged elements of murder as defined by the hypothetically correct jury charge, we hold that 
a rational trier of fact could have found beyond a reasonable doubt that Compton committed an act clearly dangerous to human life that caused Ramsinghani’s death.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  
The evidence is legally sufficient to support Compton’s murder conviction.  
See generally Botello v. State
, No. 08-04-00127-CR, 2005 WL 2044667 (Tex. App.—El Paso Aug. 25, 2005, pet. ref’d) (not designated for publication) (holding evidence sufficient to support conviction despite immaterial variance between the manner and means alleged (striking the head of the complainant against a door frame) and the actual manner and means used (pushing complainant)). 
 Further, v
iewing all the evidence in a neutral light, favoring neither party, we hold that the evidence is factually sufficient to support Compton’s murder conviction.  
See Watson
, 204 S.W.3d at 414.
  We overrule Compton’s fourth, fifth, sixth, and seventh points.

Having determined that the evidence is legally and factually sufficient to support Compton’s murder conviction under section 19.02(b)(2) of the penal code, we need not consider his second and third points challenging the sufficiency of the evidence to support his conviction under section 19.02(b)(1). 
See 
Tex. R. App. P.
 47.1; 
Kitchens v. State
, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991), 
cert. denied
, 504 U.S. 958 (1992).  (“It is appropriate where the alternate theories of committing the same offense are submitted to the jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted.”).

IV.  Lesser Included Offense

In his eighth point, Compton argues that the trial court erred by failing to instruct the jury on the lesser included offense of criminally negligent homicide.  Compton points to testimony allegedly showing that he did not appreciate the risk involved when he pushed Ramsinghani.

We use a two-step analysis to determine whether an appellant was entitled to a lesser included offense instruction.  
Hall v. State
, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); 
Rousseau v. State
, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 919 (1993).  First, the lesser offense must come within article 37.09 of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann.
 art. 37.09; 
Moore v. State,
 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).
  “An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged.”  
Tex. Code Crim. Proc. Ann
. art. 37.09(1) (Vernon 2006); 
see also Hall
, 225 S.W.3d at 536.  This inquiry is a question of law. 
 
Hall
, 225 S.W.3d at 535.  It does not depend on the evidence to be produced at the trial but is performed by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser included offense.  
Id.
 at 525, 535–36.

Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense.  
Hall
, 225 S.W.3d at 536; 
Salinas v. State
, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); 
Rousseau
, 855 S.W.2d at 672–73.  The evidence must be evaluated in the context of the entire record.  
Moore
, 969 S.W.2d at 8.  There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser included offense.  
Id.
  The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence.  
Id.
  Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. 
 Hall
, 225 S.W.3d at 536.  Isolated facts taken out of context from the record will not justify a lesser included offense instruction.  
Barcenas v. State
, 940 S.W.2d 739, 745 (Tex. App.—San Antonio 1997, pet. ref’d). 

A person commits criminally negligent homicide if he causes the death of an individual by criminal negligence.  
Tex. Penal Code Ann.
 § 19.05(a) (Vernon 2003).  Criminal negligence occurs when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur.  
Id
. § 6.03(d).
  The offense of criminally negligent homicide involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof but fails to perceive the risk.  
Goodman v. State
, 190 S.W.3d 823, 831 (Tex. App.—Fort Worth 2006, pet. ref’d).  Simply because the defendant did not intend the result does not automatically entitle the defendant to a charge on criminal negligence.  
Wong v. State
, 745 S.W.2d 563, 565 (Tex. App.—Waco 1988, no pet.).

Criminally negligent homicide is a lesser included offense of murder.  
Cardenas v. State
, 30 S.W.3d 384, 392–93 (Tex. Crim. App. 2000).
  The issue then is whether there is evidence showing that Compton, if guilty, is guilty only of the offense of criminally negligent homicide.  
See Hall
, 225 S.W.3d at 536.

Compton argues that the following testimony entitled him to a criminally negligent homicide charge:

[Prosecutor]:  Would you say that you were aware he was going to fall if you pushed him that hard?

[Compton]:  No, sir.  I couldn’t be aware that he was going to fall.

This isolated piece of testimony is not evidence that Compton failed to perceive the 
risk 
that Ramsinghani might fall if pushed hard enough.  Rather, it is evidence that Compton did not 
actually know 
that Ramsinghani was going to fall.  Compton’s testimony demonstrates that he was aware that the act of pushing a person with sufficient force could cause the person to move or fall in another direction.  Compton also agreed that a person is likely to hit his head when falling backwards after being pushed, especially if there are objects like walls, floors, and furniture around.  The other portions of Compton’s testimony relied on by him do not demonstrate that he failed to perceive the risk associated with Ramsinghani falling if pushed hard enough.  We hold that the record does not contain evidence that would permit a jury to rationally find that if Compton was guilty, he was guilty only of criminally negligent homicide.  
See id
.  We overrule Compton’s eighth point.

V.  Sudden Passion

In his ninth point, Compton argues that the trial court erred by failing to sua sponte include a jury charge instruction on sudden passion at punishment.  Compton admits that he did not object at trial to the absence of such an instruction nor did he request that the instruction be included in the charge, but he argues that we are to review the absence of the charge for egregious harm.  
See Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).
  
Our first task when analyzing a jury charge issue, however, is to determine whether error exists.  
Middleton v. State
, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).  Only if we find error do we apply the appropriate harm analysis depending on whether the error was preserved in the trial court.  
See id
. (“Error preservation does not become an issue until harm is assessed because ‘the degree of harm necessary for reversal depends upon whether the error was preserved.’”); 
See Almanza
, 686 S.W.2d at 171.

At the punishment stage of a murder trial, the defendant may raise the issue of whether he caused the death under the immediate influence of sudden passion arising from an adequate cause.  
Tex. Penal Code Ann.
 § 19.02(d).  If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.  
Id
.  The sudden passion arising from adequate cause is thus a defensive issue.  A trial court has no duty to sua sponte instruct the jury on unrequested defensive issues.  
Posey v. State
, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998).

Here, absent a request or objection by Compton, the trial court’s failure to sua sponte instruct the jury on the unrequested defensive issue of sudden passion was not error because the trial court had no such duty.  
See id
.  Absent error, we need not perform a harm analysis.  
See Middleton
, 125 S.W.3d at 43.  We overrule Compton’s ninth point.

VI.
  Conclusion

Having overruled Compton’s points, we affirm the trial court’s judgment.
 

PER CURIAM

PANEL F:  HOLMAN, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  December 20, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.