COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-281-CR

 

 

EDWARD COMPTON                                                            APPELLANT

A/K/A
EDWARD JACKSON

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 235TH DISTRICT COURT OF COOKE COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








A jury convicted Appellant
Edward Compton a/k/a Edward Jackson of murder and assessed his punishment at
twenty-five years=
confinement.  In nine points, Compton
argues that there was a fatal variance between the allegations in the
indictment and the evidence presented at trial; that the evidence is legally
and factually insufficient to show that he intentionally or knowingly committed
murder, that he committed an act clearly dangerous to human life, and that he
caused the death of the victim; and that the trial court erred by refusing to
instruct the jury on the offense of criminally negligent homicide and by
failing to sua sponte include a jury charge instruction at punishment on sudden
passion.  We will affirm.

II.  Factual and Procedural Background








During the early morning
hours of June 7, 2000, Cassandra Calhoun, who worked with Raj Ramsinghani at a
liquor store in Gainesville, went to Ramsinghani=s small apartment after work to help him hook up a new VCR. Compton,
who had lived with Calhoun on and off for a few years and considered her to be
his common law wife, showed up at Ramsinghani=s apartment shortly thereafter looking for Calhoun and intending that
she leave with him.  After Ramsinghani
answered Compton=s knock on
the front door, Calhoun, who was sitting on a bedroom floor, heard Compton
yelling and saw him Aswinging
with his fists@ and Ahitting@
Ramsinghani.  Ramsinghani did not swing
back at Compton; he put his hands up in an attempt to defend himself from
Compton=s blows.  As the altercation
progressed, Compton and Ramsinghani moved towards the bedroom and a bathroom
just before Compton pushed Ramsinghani, causing him to fall backwards into the
bathroom and strike the back of his head on an unknown object.  Calhoun did not see Ramsinghani hit the floor
or the object that his head contacted while falling to the floor, but she heard
a noise that sounded like Ramsinghani hit the wall or some other object.  After Ramsinghani fell to the floor, Compton
bent over and struck Ramsinghani=s face multiple times with his fists as Calhoun screamed at him to
stop.  Compton stopped hitting
Ramsinghani, noticed that there was blood coming out of Ramsinghani=s ears, and left the apartment before police arrived.

The incident left Ramsinghani
in a coma with contusions and bruises on his face and a fracture to the rear
base of his skull that caused a subdural and subarachnoid hemorrhage.  He died ten days later in a Fort Worth
hospital.  The medical examiner listed
Ramsinghani=s cause of
death as craniocerebral trauma due to blunt force injury of the headCan injury consistent with Ramsinghani=s head moving at a rapid pace before contacting a hard surface.








The State subsequently
indicted Compton for murder, alleging that Compton either intentionally or
knowingly caused Ramsinghani=s death or that, with intent to cause serious bodily injury, he
committed an act clearly dangerous to human life that caused Ramsinghani=s death.  At trial, an
investigator testified that his office was unable to determine the object that
Ramsinghani=s head
struck as he fell to the floor.  A police
officer testified that he responded to a call at Ramsinghani=s address about one month before the June 7, 2000 incident because
Compton had been knocking on Ramsinghani=s door, had broken one of the apartment=s windows, and was intoxicated. 
The officer arrested Compton. 
Compton testified that he entered the apartment and pushed Ramsinghani
off of him when Ramsinghani Agrabbed@ him.  Compton agreed that he pushed Ramsinghani,
that Ramsinghani hit his head on an object, and that Ramsinghani died.  The jury ultimately convicted Compton of
murder, and this appeal followed.

III.  Variance and Sufficiency Arguments

Compton challenges the
sufficiency of the evidence to support his murder conviction.  Specifically, in his first point, Compton
argues that a fatal variance between the allegations in the indictment and the
proof presented at trial rendered the evidence insufficient to support his
conviction.  In his fourth and fifth
points, Compton argues that the evidence is legally and factually insufficient
to show that he murdered Ramsinghani by committing an act clearly dangerous to
human life.  And in his sixth and seventh
points, Compton argues that the evidence is legally and factually insufficient
to show that his actions caused Ramsinghani=s death.  Because our legal
sufficiency analysis is affected by our determination of Compton=s fatal variance argument, we initially consider his first point.








A.     Fatal Variance

Compton argues that a fatal
variance existed between the indictment and the proof at trial because the
evidence showed that he caused Ramsinghani to fall to the floor and strike his
head on an unknown object when he pushed Ramsinghani instead of when he hit
Ramsinghani in the head with his hands, as the indictment alleges.








A variance occurs when there
is a discrepancy between the allegations in the charging instrument and the
proof at trial.  Gollihar v. State,
46 S.W.3d 243, 246 (Tex. Crim. App. 2001). 
In a variance situation, the State proves the defendant guilty of a
crime, but proves the crime=s commission in a manner that differs from the allegations in the
charging instrument.  Id.  Not all variances are fatal (or Amaterial@),
however.  A variance between the wording
of an indictment and the evidence presented at trial is fatal only if it is
material and prejudices the defendant=s substantial rights.  Gollihar,
46 S.W.3d at 257; see also Fuller v. State, 73 S.W.3d 250, 253 (Tex.
Crim. App. 2002).  In reviewing the
materiality of such a variance, we must determine whether the variance deprived
the defendant of notice of the charges and whether the variance subjects the
defendant to the risk of being prosecuted later for the same crime.  Fuller, 73 S.W.3d at 253; Gollihar,
46 S.W.3d at 257.  A variance claim
raises a legal sufficiency point.  Gollihar,
46 S.W.3d at 247 & n.6.  Allegations
giving rise to immaterial variances may be disregarded in the hypothetically
correct charge, but allegations giving rise to material variances must be
included.  Id. at 257.

Here, the indictment alleged
that Compton committed murder in two alternative methods.  It states as follows:

[Compton]
did then and there intentionally or knowingly cause the death of an individual,
Rajkumar Ramsinghani, by striking the said Rajkumar Ramsinghani in the head
with the defendant=s
hands and by causing the said Rajkumar Ramsinghani=s
head to strike an object unknown to the Grand Jury.

 

And
the grand jurors aforesaid . . . do further present in and to said
Court that . . . [Compton] did then and there with intent to cause
serious bodily injury to an individual, namely Rajkumar Ramsinghani, commit an
act clearly dangerous to human life, to-wit: did then and there strike the
said Rajkumar Ramshinghani in the head with the defendant=s
hands and cause the said Rajkumar Ramshinghani=s
head to strike an object unknown to the Grand Jury, that caused
the death of the said Rajkumar Ramsinghani. [Emphasis added.]

 

Part of the jury charge tracked the language in
the indictment and stated as follows:








Now,
bearing in mind the foregoing definitions and instructions, if you find from
the evidence beyond a reasonable doubt that on or about June 7, 2000 in Cooke
County, Texas, the defendant, Edward Compton, did then and there either (1)
intentionally or knowingly cause the death of an individual, Rajkumar
Ramsinghani, by striking him in the head with the defendant=s
hands and by causing his head to strike an unknown object, or (2) with the
intent to cause serious bodily injury to an individual, Rajkumar Ramsinghani,
commit an act clearly dangerous to human life, to wit: strike Ramsinghani in
the head with the defendant=s hands and cause his head to
strike an unknown object, that caused the death of Ramsinghani, you will find
the defendant guilty of murder as charged in the indictment and so say by your
verdict.

 

The evidence demonstrates
that Calhoun and Compton were the only two individuals who were at Ramsinghani=s apartment on June 7, 2000, and who testified regarding the events
that transpired that night.  Calhoun
testified that Ramsinghani Afell@ when
Compton was Ahitting@ Ramsinghani.  On
cross-examination, however, Calhoun agreed that she stated in her statement to
police that she observed Compton Apush@
Ramsinghani, causing him to fall to the floor. 
Calhoun recounted in her statement that Compton Apushed [Ramsinghani] into the back@ and Apushed him
down.@  Compton testified that
Ramsinghani grabbed him and that he Apushed@
Ramsinghani, causing him to fall.  There
is evidence that Compton struck Ramsinghani before and after Ramsinghani fell
to the floor, but our review of the record does not reveal any evidence that it
was Compton=s striking
of Ramsinghani in the head that caused Ramsinghani to fall backwards and strike
his head on an unknown object.  Rather,
most, if not all, of the evidence showed that Ramsinghani fell backwards and
struck his head on an unknown object when Compton pushed him.  We thus agree with Compton that a variance
exists between the allegations in the indictment and the evidence presented at
trial.








Compton argues that the
variance is material because he caused Ramsinghani to strike his head when
Compton=s hands contacted Ramsinghani=s body through the motion of a push rather than when his hands
contacted Ramsinghani=s head by
way of a striking motion.  The indictment
does not allege that Compton caused Ramsinghani=s death by striking him in the head with his hands.  Instead, Ramsinghani=s death was alleged to have been caused when his head struck an
unknown objectCa result
initiated and caused by Compton=s intentional, knowing, or clearly dangerous to human life action of
striking Ramsinghani=s head.  Whether a person strikes an individual in the
head with his hands or pushes an individual with his hands, the person makes
contact with the body of the individual being struck or pushed.  In both instances, contact with the body of
the individual being struck or pushed results in a certain amount of force
being exerted upon that person=s body, albeit in a different manner. 
And under normal circumstances, the force in turn exerted upon the
individual causes a resultCfalling backward, bleeding, bruising, or some other physiological
response.








In this case, we cannot say
that the indictment failed to give Compton notice that he was being charged
with the offense of murder because the evidence at trial demonstrated that the
force exerted by Compton upon Ramsinghani=s body causing him to strike his head and die resulted from the
motion of a push rather than from a strike to the head.  In each instance, it was Compton=s action of contacting Ramsinghani=s body with his hands that caused Ramsinghani to strike his head on an
unknown object and die.  The record as a
whole demonstrates that Compton was sufficiently informed of the charges
against him so that he could present an adequate defense; his defense counsel
extensively cross-examined the State=s witnesses and argued on his behalf throughout the trial.  Compton also does not run the risk of being
prosecuted again for the June 7, 2000 murder of Ramsinghani.  Accordingly, we hold that the variance
between the allegations in the indictment and the proof presented at trial was
not material.  See Fuller, 73
S.W.3d at 253; Gollihar, 46 S.W.3d at 257.  Consequently, we will disregard the
immaterial variance in conducting our evidentiary sufficiency analysis under
the hypothetically correct jury charge.  See
Gollihar, 46 S.W.3d at 257.  We
overrule Compton=s first
point.

B.     Standards of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to ultimate
facts.  Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; Clayton, 2007 WL 2937093, at *4.

The trier of fact is the sole
judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine whether the necessary inferences are reasonable based upon
the combined and cumulative force of all the evidence when viewed in the light
most favorable to the verdict.@  Hooper v. State, 214
S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the fact-finder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 2007 WL 2937093, at *4.








The sufficiency of the
evidence should be measured by the elements of the offense as defined by the
hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Bowden v. State, 166 S.W.3d 466, 470 (Tex. App.CFort Worth 2005, pet. ref=d).  Such a charge would be one
that accurately sets out the law, is authorized by the indictment, does not
unnecessarily restrict the State=s theories of liability, and adequately describes the particular
offense for which the defendant was tried. 
Gollihar, 46 S.W.3d at 253; Malik, 953 S.W.2d at 240.  The law as authorized by the indictment means
the statutory elements of the charged offense as modified by the charging
instrument.  See Curry v. State,
30 S.W.3d 394, 404 (Tex. Crim. App. 2000).








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414B15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.  An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

C.     Legally and Factually
Sufficient Evidence of Murder

A person commits murder if he
(1) intends to cause serious bodily injury and (2) commits an act clearly
dangerous to human life that (3) causes the death of an individual.  Tex.
Penal Code Ann. ' 19.02(b)(2)
(Vernon 2003).  Intent to kill is not
required to commit murder under section 19.02(b)(2).  Ramirez v. State, 229 S.W.3d 725, 729
(Tex. App.CSan Antonio
2007, no pet.).  Rather, there must be an
intent to cause serious bodily injury to the individual whose death results
from an act clearly dangerous to human life. 
Id.; see also Ortiz v. State, 651 S.W.2d 764 (Tex. Crim.
App. 1983).








Compton=s argument challenging the sufficiency of the evidence to support his
section 19.02(b)(2) murder conviction is limited to whether he committed an act
clearly dangerous to human life that caused Ramsinghani=s death.  Compton does not argue
that the evidence is legally and factually insufficient to show that he
intended to cause Ramsinghani serious bodily injury.  We therefore do not analyze whether there is
sufficient evidence demonstrating that Compton intended to cause Ramsinghani
serious bodily injury.  See Tex. R. App. P. 47.1; Lugo-Lugo v.
State, 650 S.W.2d 72, 81 (Tex. Crim. App. 1983) (AThe second element of prosecution under section 19.02(b)(2) requires a
showing that the individual commits an act clearly dangerous to human life
. . . .@); Garza
v. State, 974 S.W.2d 251, 254 (Tex. App.CSan Antonio 1998, pet. ref=d) (considering sufficiency of evidence in support of murder
conviction under section 19.02(b)(2) and stating that A[t]he only element of this offense that is in dispute is whether Garza
intended to cause serious bodily injury@); Nickerson v. State, No. 02-04-00180-CR, 2005 WL 1356440, at
*11B12 (Tex. App.CFort Worth
June 9, 2005, pet ref=d) (mem.
op.) (not designated for publication) (considering sufficiency of the evidence
to support the separately challenged elements of (1) whether appellant intended
to cause serious bodily injury and (2) whether appellant committed an act
clearly dangerous to human life).








An act clearly dangerous to
human life is one that creates a substantial risk of death.  Depauw v. State, 658 S.W.2d 628, 634
(Tex. App.CAmarillo
1983, pet. ref=d).  The test for determining whether an act is
clearly dangerous to human life is an objective one.  Lugo-Lugo, 650 S.W.2d at 81.  We thus do not consider whether the defendant
subjectively knew that his acts were clearly 
dangerous to human life; rather, we focus on whether the acts themselves
were clearly dangerous to human life.  Rogers
v. State, No. 05-92-00507-CR, 1994 WL 121055, at *3 (Tex. App.CDallas Apr. 4, 1994, no pet.) (not designated for publication).

Here, the evidence shows that
the incident took place in Ramsinghani=s apartment.  Witnesses described
the apartment as Arather
small,@ resembling an efficiency or economy apartment.  After Compton had entered the apartment,
Calhoun overheard Compton telling Ramsinghani that he was going to kill him
before Compton began beating Ramsinghani with his fists, forcing Ramsinghani to
the rear of the apartment.  Once in the
bedroom and near the entrance to the bathroom, Compton pushed Ramsinghani,
causing Ramsinghani to fall and strike his head on an unknown object.








Marc Krause, the medical
examiner who performed Ramsinghani=s autopsy, identified Ramsinghani=s cause of death as craniocerebral trauma, describing it as Atraumatic or physical injury of the brain and head due to blunt force
injury to the head.@  Dr. Krause agreed that the injury was
consistent with having been pushed Awith such great force backwards.@  Elaborating on
cross-examination, Dr. Krause testified that a person=s head travels at least 1.7 times the normal gravitational
acceleration when falling backwards, Aparticularly if there=s some force added to that acceleration.@  He explained that
craniocerebral trauma may result because, A[w]hen a moving head hits a hard surface, particularly the back of
somebody=s head . . . , the brain continues to move inside the skull
until it flaks against the inside of the skull.@  According to Dr. Krause, in
such a situation, A[t]he greatest
brain injury occurs on the complete opposite side from the impact point,@ which is what happened in this case.

Bill Morgan, a trauma surgeon
in Fort Worth who treated Ramsinghani, testified that Ramsinghani arrived at
the hospital with swelling and contusions around his face and blood coming out
of his ear canalsCa sign of a
basilar skull fracture.  Dr. Morgan
testified that Ramsinghani=s skull fracture Awould have been the result of his head moving at some rapid pace and
then hitting some sort of hard surface, probably a fixed object of some type.@  [Emphasis added.] Dr. Morgan
reasoned that the amount of force required to cause the type of injury
sustained by Ramsinghani was greater than that exerted by someone who simply
falls on the floor.  The following
exchange took place:

[Defense
counsel]: But you have seen people where they=ve
just fallen on the floor [with] no force whatsoever and have this type of
injury, haven=t
you?

 

        [Dr.
Morgan]: Not with the extents of - - the extent of the skull fracture.  I have seen the intracranial bruising, yes,
sir, but not the skull fracture.

 








Indeed, in response to the State=s question as to whether Aexerting that type of force against another person with objects around
that they might hit is reasonably certain to result in death or serious bodily
injury,@ Dr. Morgan reasoned that such a result is Aprobably more than a 50 percent likelihood.@  Dr. Morgan also testified that
Ramsinghani Ahad both the
subdural and the subarachnoid hemorrhage, which is evidence of the fact that
whatever the injury producing mechanism was, it was of significant enough
amount of force to cause blood under both of those layers of@ the lining around the brain. [Emphasis added.]  The experts= testimony thus demonstrates that the extent of brain trauma
experienced by a falling person whose head contacts a hard object is proportional
to the amount of force initiated upon that person when pushed.

Compton testified that he was
not aware that Ramsinghani was going to fall if he pushed him and that he
intended to Aget
[Ramsinghani] off of [him],@ not that he intended to push him hard enough to make him fall.  Compton also points to evidence that
Ramsinghani had consumed alcohol on the night that he was killed and that it is
possible that he Afell after
being pushed as a result of being unsteady because of his alcohol consumption
rather than as a result of the force used by Appellant.@  As the judge of the
credibility of the witnesses, however, the jury was free to believe or
disbelieve part or all of the witnesses= testimony, including Compton=s testimony, which it disbelieved. 
See Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).













The evidence does not show
that Compton pushed Ramsinghani with such a small amount of force that the push
was not clearly dangerous to Ramsinghani=s life.  Rather, the evidence
demonstrates that Compton was overheard telling Ramsinghani that he was going
to kill him and that he committed an act clearly dangerous to human life when
he pushed Ramsinghani in the small apartment with such force that there was
more than a fifty percent chance that Ramsinghani was reasonably certain to
suffer serious bodily injury or die when his head contacted the wall, the
floor, or some other object.  See Tex. Penal Code Ann. ' 19.02(b)(2).  Compton even
agreed on cross-examination that he pushed Ramshinghani Ahard@ and that
the push caused Ramsinghani to fall. 
Viewing the evidence in the light most favorable to the verdict and
measuring the challenged elements of murder as defined by the hypothetically
correct jury charge, we hold that a rational trier of fact could have found
beyond a reasonable doubt that Compton committed an act clearly dangerous to human
life that caused Ramsinghani=s death.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  The
evidence is legally sufficient to support Compton=s murder conviction.  See
generally Botello v. State, No. 08-04-00127-CR, 2005 WL 2044667 (Tex. App.CEl Paso Aug. 25, 2005, pet. ref=d) (not designated for publication) (holding evidence sufficient to
support conviction despite immaterial variance between the manner and means
alleged (striking the head of the complainant against a door frame) and the
actual manner and means used (pushing complainant)).  Further, viewing all the evidence in a
neutral light, favoring neither party, we hold that the evidence is factually
sufficient to support Compton=s murder conviction.  See
Watson, 204 S.W.3d at 414.  We
overrule Compton=s fourth,
fifth, sixth, and seventh points.

Having determined that the
evidence is legally and factually sufficient to support Compton=s murder conviction under section 19.02(b)(2) of the penal code, we
need not consider his second and third points challenging the sufficiency of
the evidence to support his conviction under section 19.02(b)(1). See Tex. R. App. P. 47.1; Kitchens v.
State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991), cert. denied, 504
U.S. 958 (1992).  (AIt is appropriate where the alternate theories of committing the same
offense are submitted to the jury in the disjunctive for the jury to return a
general verdict if the evidence is sufficient to support a finding under any of
the theories submitted.@).

IV.  Lesser Included Offense

In his eighth point, Compton
argues that the trial court erred by failing to instruct the jury on the lesser
included offense of criminally negligent homicide.  Compton points to testimony allegedly showing
that he did not appreciate the risk involved when he pushed Ramsinghani.








We use a two-step analysis to
determine whether an appellant was entitled to a lesser included offense
instruction.  Hall v. State, 225
S.W.3d 524, 528 (Tex. Crim. App. 2007); Rousseau v. State, 855 S.W.2d
666, 672B73 (Tex. Crim. App.), cert. denied, 510 U.S. 919 (1993).  First, the lesser offense must come within
article 37.09 of the code of criminal procedure.  Tex.
Code Crim. Proc. Ann. art. 37.09; Moore v. State, 969 S.W.2d 4, 8
(Tex. Crim. App. 1998).  AAn offense is a lesser included offense if . . . it is
established by proof of the same or less than all the facts required to
establish the commission of the offense charged.@  Tex. Code Crim. Proc. Ann. art. 37.09(1) (Vernon 2006); see
also Hall, 225 S.W.3d at 536.  This
inquiry is a question of law.  Hall,
225 S.W.3d at 535.  It does not depend on
the evidence to be produced at the trial but is performed by comparing the
elements of the offense as they are alleged in the indictment or information
with the elements of the potential lesser included offense.  Id. at 525, 535B36.








Second, some evidence must
exist in the record that would permit a jury to rationally find that if the
appellant is guilty, he is guilty only of the lesser offense.  Hall, 225 S.W.3d at 536; Salinas v.
State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau, 855
S.W.2d at 672B73.  The evidence must be evaluated in the context
of the entire record.  Moore, 969
S.W.2d at 8.  There must be some evidence
from which a rational jury could acquit the appellant of the greater offense
while convicting him of the lesser included offense.  Id. 
The court may not consider whether the evidence is credible, controverted,
or in conflict with other evidence.  Id.  Anything more than a scintilla of evidence
may be sufficient to entitle a defendant to a lesser charge.  Hall, 225 S.W.3d at 536.  Isolated facts taken out of context from the
record will not justify a lesser included offense instruction.  Barcenas v. State, 940 S.W.2d 739, 745
(Tex. App.CSan Antonio
1997, pet. ref=d). 

A person commits criminally
negligent homicide if he causes the death of an individual by criminal
negligence.  Tex. Penal Code Ann. ' 19.05(a) (Vernon 2003). 
Criminal negligence occurs when the person ought to be aware of a
substantial and unjustifiable risk that the circumstances exist or the result
will occur.  Id. ' 6.03(d).  The offense of
criminally negligent homicide involves inattentive risk creation, that is, the
actor ought to be aware of the risk surrounding his conduct or the results thereof
but fails to perceive the risk.  Goodman
v. State, 190 S.W.3d 823, 831 (Tex. App.CFort Worth 2006, pet. ref=d).  Simply because the
defendant did not intend the result does not automatically entitle the
defendant to a charge on criminal negligence. 
Wong v. State, 745 S.W.2d 563, 565 (Tex. App.CWaco 1988, no pet.).








Criminally negligent homicide
is a lesser included offense of murder.  Cardenas v. State, 30 S.W.3d 384,
392B93 (Tex. Crim.
App. 2000). 
The issue then is whether there is evidence showing that Compton, if
guilty, is guilty only of the offense of criminally negligent homicide.  See Hall, 225 S.W.3d at 536.

Compton argues that the
following testimony entitled him to a criminally negligent homicide charge:

[Prosecutor]:  Would you say that you were aware he was
going to fall if you pushed him that hard?

 

[Compton]:  No, sir. 
I couldn=t be
aware that he was going to fall.

 

This isolated piece of testimony is not evidence
that Compton failed to perceive the risk that Ramsinghani might fall if
pushed hard enough.  Rather, it is
evidence that Compton did not actually know that Ramsinghani was going
to fall.  Compton=s testimony demonstrates that he was aware that the act of pushing a
person with sufficient force could cause the person to move or fall in another
direction.  Compton also agreed that a
person is likely to hit his head when falling backwards after being pushed,
especially if there are objects like walls, floors, and furniture around.  The other portions of Compton=s testimony relied on by him do not demonstrate that he failed to
perceive the risk associated with Ramsinghani falling if pushed hard
enough.  We hold that the record does not
contain evidence that would permit a jury to rationally find that if Compton
was guilty, he was guilty only of criminally negligent homicide.  See id.  We overrule Compton=s eighth point.








V.  Sudden Passion

In his ninth point, Compton
argues that the trial court erred by failing to sua sponte include a jury
charge instruction on sudden passion at punishment.  Compton admits that he did not object at
trial to the absence of such an instruction nor did he request that the
instruction be included in the charge, but he argues that we are to review the
absence of the charge for egregious harm. 
See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  Our
first task when analyzing a jury charge issue, however, is to determine whether
error exists.  Middleton v. State,
125 S.W.3d 450, 453 (Tex. Crim. App. 2003). 
Only if we find error do we apply the appropriate harm analysis
depending on whether the error was preserved in the trial court.  See id. (AError preservation does not become an issue until harm is assessed
because >the degree of harm necessary for reversal depends upon whether the
error was preserved.=@); See Almanza, 686 S.W.2d at 171.








At the punishment stage of a
murder trial, the defendant may raise the issue of whether he caused the death
under the immediate influence of sudden passion arising from an adequate cause.  Tex.
Penal Code Ann. ' 19.02(d).  If the defendant proves the issue in the
affirmative by a preponderance of the evidence, the offense is a felony of the
second degree.  Id.  The sudden passion arising from adequate
cause is thus a defensive issue.  A trial
court has no duty to sua sponte instruct the jury on unrequested defensive
issues.  Posey v. State, 966
S.W.2d 57, 62 (Tex. Crim. App. 1998).

Here, absent a request or
objection by Compton, the trial court=s failure to sua sponte instruct the jury on the unrequested defensive
issue of sudden passion was not error because the trial court had no such
duty.  See id.  Absent error, we need not perform a harm
analysis.  See Middleton, 125
S.W.3d at 43.  We overrule Compton=s ninth point.

VI.  Conclusion

Having overruled Compton=s points, we affirm the trial court=s judgment. 

 

PER CURIAM

 

PANEL F: 
HOLMAN, DAUPHINOT, and GARDNER, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: 
December 20, 2007











[1]See Tex. R.
App. P. 47.4.