**Martin Francisco Rocha WONG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–87–132–CR.**

Court of Appeals of Texas, Waco.

Feb. 18, 1988.

Walter M. Reaves, Jr., West, for appellant.

Vic Feazell, Crim. Dist. Atty., Jim Vandygriff, Asst. Dist. Atty., Waco, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by defendant Wong from conviction for murder for which he was assessed 10 years and a $5000 fine.

Defendant lived in a house in McLennan County, Texas with several other men: Narcisso Medina, Hillario Medina, Benito Guzman, and Reinaldo Andublo, the victim of the murder. Defendant had come to Texas from Mexico and had been living in the house for approximately a month.

The State offered the testimony of Narcisso Medina and Hillario Medina, both of whom witnessed the incident. They testified that on January 9, 1987, everyone living in the house was present that evening. The men bought a 12–pack of beer around 8 p.m. and another 12–pack around 10 p.m. At some point in the evening, defendant, the victim and Narcisso Medina began playing cards. When the card game began to break up, defendant stated he wanted to continue playing and play for money. When the others refused, defendant became angry. Following the argument, defendant left the room, walking towards the kitchen. The victim got up shortly thereafter and began moving towards the kitchen. As the victim was going through the door leading to the kitchen, he fell back away from the door spurting blood. Neither Narcisso nor Hillario witnessed the actual stabbing, but as they moved forward to assist the victim, Narcisso saw defendant standing on the other side of the doorway with a butcher knife in his hand. Narcisso shut the door against defendant. A short time later when Narcisso opened the door in order to take the victim to the hospital, defendant was gone.

Defendant testified that on the night of the incident he, the victim, and Narcisso were playing cards for small amounts of money. Towards the end of the game, Narcisso wanted to play one last hand for $5. Defendant refused and then jokingly suggested they play for $10 a hand. When Narcisso refused, defendant said to him, "Why? Are you scared? Don't you want to play for ten?" At that point Hillario Medina stood up and hit defendant over the lip with a full can of beer. Hillario then picked up a metal chair and the other men began advancing towards him. Defendant looked around for something to defend himself with and grabbed a knife. One of the men grabbed the knife in defendant's hand and a struggle ensued. Defendant tugged and pulled the knife out of the

man's hands and took off running to the outside of the house.

Reinaldo Andublo, the victim, died as the result of a one-half inch wound to the neck which severed a major artery.

Defendant appeals on 3 points.

Point 1 asserts the trial court erred in refusing to submit a charge on the lesser included offense of criminally negligent homicide.

> Criminal negligence is defined as follows: A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex.Penal Code Ann. § 6.03(d) (Vernon 1974). The key to criminal negligence is the failure of the actor to perceive the risk created by his conduct. *Lewis v. State,* 529 S.W.2d 550 (Tex.Cr.App.1975). Simply because the defendant did not intend the result does not automatically entitle the defendant to a charge on criminal negligence. We must determine if evidence was presented raising an issue of whether defendant was aware of the risk and whether the defendant ought to have, but did not, perceive a substantial and unjustifiable risk in his conduct. *Thomas v. State,* 699 S.W.2d 845 (Tex.Cr.App.1985).

Defendant testified on direct examination:

Q. Who hit you on the lip?
A. Hillario.
Q. With what?
A. With a beer.
Q. What happened after that, if anything?
A. After he hit me?
Q. Yes.
A. I took a couple of steps backwards towards the door because he picked up a metal chair.

Q. Who is he?
A. Hillario. He picked up a chair. Okay. When he picked up the chair, the others also came at me. And I turned around to see what I could get into my hands to defend myself....

Defendant then testified on cross-examination:

Q. When you picked up the knife, you intended to use it?
A. Not at any moment did I try to use it. I picked it up hoping they would not come toward me.

Defendant's testimony is similar to that in *Mendieta v. State,* 706 S.W.2d 651 (Tex.Cr. App.1986), where the court found that the defendant was not entitled to a charge on criminally negligent homicide where the evidence showed defendant pulled a knife and began swinging it in order to keep the victim away from him. While the defendant in *Mendieta* testified that he did not intend to kill the victim, the court found that by intending to keep the victim away by use of the knife, he was aware of the risk created by his action.

■ In the instant case, defendant testified that he tried to find something with which to defend himself and grabbed a knife. He further stated that by picking up the knife he hoped the others would not advance. The jury was instructed on the law of self defense. The evidence does not indicate that defendant was unaware of the risk created by his conduct.

Point 1 is overruled.

Point 2 asserts the trial court erred in submitting the State's requested instruction on the use of a deadly weapon where the request was made after the charge had been finally prepared and objections taken from both sides.

Testimony was heard in the punishment phase of the trial on June 24, 1987. The jury was excused after the testimony and the court tendered its proposed charge and asked for objections. Neither the defendant nor the State had any objections and the court recessed until the next morning. On the morning of June 25, the State re-

quested an issue regarding use of a deadly weapon during the commission of the offense. The court granted such request over the objection of defendant that the charge was final and that it would be improper to amend it.

Article 36.15 of the Texas Code of Criminal Procedure provides: "Before the court reads his charge to the jury, counsel on both sides shall have a reasonable time to present written instructions and ask that they be given to the jury." Once the charge has been finally determined, it is read to the jury and arguments by counsel begin. After arguments begin, no further charge may be given unless required by improper argument, request of the jury, or when the judge allows the introduction of additional testimony. Tex.Code Crim.Proc. Ann. § 36.16 (Vernon 1981).

■ In the instant case, the charge had not been read to the jury nor had counsel commenced arguments. It was not error to grant the requested issue.

Point 2 is overruled.

Point 3 asserts the trial court erred in submitting a charge to the jury on use of a deadly weapon because the indictment failed to give defendant notice that the State would attempt to prove use of a deadly weapon during the commission of the offense.

Defendant was indicted for murder. The indictment alleged that defendant "did then and there cut and stab the said [victim] with a knife thereby causing the death of [victim]," but did not allege the use of a "deadly weapon." At the punishment stage of the trial, the trial court submitted a charge asking the jury to determine whether defendant had used or exhibited a deadly weapon during the course of the offense. The court overruled defendant's objection that he did not have notice that the State would attempt to obtain a finding on that issue. The jury found that defendant did exhibit or use a deadly weapon during the commission of the murder and this finding was entered in the judgment.

■ The entry of a deadly weapon finding in the judgment affects defendant's eligibility for parole. As the law applied at the time of defendant's trial, where no finding of a deadly weapon is found, defendant is eligible for parole whenever his time served, plus good conduct time, equals one-third of the sentence imposed. Where a deadly weapon finding is made, defendant's eligibility for parole is determined without good conduct time, and defendant is· not eligible for parole until the time actually served equals one-third of the sentence. *See* former Articles 42.12 § 3f(a)(2), 42.12 § 15(b) V.A.C.C.P., now Articles 42.12 § 3g(a)(2) and 42.18 § 8(b) V.A.C.C.P. [As of September 1, 1987, the relative periods are now one-fourth of the maximum sentence or 15 calendar years].

The Court of Criminal Appeals held in the recent case of *Ex parte Patterson*, 740 S.W.2d 766 (Tex.Cr.App.1987), that this prospective denial of an opportunity to earn early eligibility for parole is a liberty interest protected by Art. 1, § 19 of the Texas Constitution. Further, due course of law requires the State to notify a defendant of its intention to obtain in the judgment an affirmative finding of use or exhibition of a deadly weapon under Art. 42.12, § 3g(a)(2).

■ In the instant case, defendant did not have notice of the State's intention to obtain a finding on the issue of a deadly weapon. Thus the court erred in submitting a charge on this issue. However, as stated in *Ex parte Patterson*, this error did not effect the conviction or length of punishment as determined by the jury. Thus, the judgment. of the trial court will be reformed to delete the recitation of the jury's finding of "yes" to the use of a deadly weapon.

Point 3 is sustained and the judgment is reformed to delete the jury's answer to the special issue and the court's finding thereon, and is in all other respects affirmed.