Christian Rafael **TRUJILLO,**
Appellant,

v.

The **STATE of TEXAS,** Appellee.

No. 01–04–01044–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 21, 2006.

Discretionary Review Refused
June 20, 2007.

Kenneth L. Smith, Houston, TX, for Appellant.

Alan Curry, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

The State indicted appellant, Christian Rafael Trujillo, for murder. The jury found him guilty of the lesser included offense of manslaughter and assessed punishment at 17 years in prison. *See* TEX. PEN.CODE ANN. § 19.04(a) (Vernon 2003). In four issues presented for review, appellant argues that (1) the trial court erred in refusing to provide an instruction on the lesser included offense of criminally negligent homicide; (2) the evidence is legally and factually insufficient to prove the voluntariness of the shooting; and (3) he was denied the Sixth Amendment right to effective assistance of counsel by his attorney's failure to request an instruction on involuntary conduct.[1]

We affirm.

## Background

In the early morning hours of October 13, 2003, appellant and two girls who were sisters drove to the Savannah at City View apartments. Appellant and the two sisters went inside Megan Matone's apartment on the second floor. Appellant let the two sisters leave with his car while he stayed in the apartment.

When the sisters took appellant's vehicle and did not come back right away, appellant became very upset. Appellant raised his voice and used curse words at Megan. He called his friend, Eric Nunez, to come over and help him find his car. When Megan told him that the girls returned to the apartment, appellant walked to the balcony and saw the complainant, Christopher Breed, Howard Roquemone ("Buddy"), and Michael Washington walking from the parking lot. Appellant said "what's up" to the three men. Appellant and the complainant started arguing and eventually everyone went inside the apartment. Someone pushed appellant down on the couch, and when he stood up, the complainant hit him in the face. Eric then arrived and took appellant out of the apartment, followed by the complainant, Buddy, and Michael. As appellant and Eric walked toward the entrance gate that led to the parking lot, appellant took a gun[2] from Eric and walked back to the group of men standing at the bottom of the stairs. Witnesses testified that appellant came from around a corner and pointed the gun at the complainant's head. When the complainant realized appellant was pointing a gun at him, the complainant attempted to slap appellant's hand away, but the gun discharged and resulted in the complainant being shot. After the complainant fell down, appellant kicked him several times and then fled the scene.

Appellant controverted the eye-witness testimony. He testified that he held the

---

1. Appellant's brief sets out a fifth issue, complaining of the denial of a requested instruction regarding justified threat of force, but it was never pursued. Thus, we do not address it. *See* TEX.R.APP. P. 38.1(h).

2. The gun is described as a semi-automatic .25 caliber Lorcin.

gun up to scare everyone and that the complainant ran toward him and hit the gun and it discharged. He further testified that he kicked the complainant because he thought the complainant was still coming after him. Appellant testified that he did not point the gun at the complainant's head as other witnesses had testified and that the gun discharged even though he did not have his finger over the trigger.

## Analysis

### *Criminal Negligence*

■ In his first issue, appellant argues that the trial court erred by failing to include the lesser included offense of criminally negligent homicide.

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PEN.CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). A person commits the offense of criminally negligent homicide if he causes the death of an individual by criminal negligence. *Id.* § 19.05(a) (Vernon 2003). The Texas Penal Code defines the pertinent culpable mental states as follows:

(a) A person acts intentionally, or with intent, with respect to ... his conduct when it is his conscious objective or desire to ... cause the result.

(b) A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

(c) A person acts recklessly, or is reckless, with respect to ... the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the ... result will occur. The risk must be

of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

(d) A person acts with criminal negligence, or is criminally negligent, with respect to ... the result of his conduct when he ought to be aware of a substantial and unjustifiable risk ... or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(a)-(d) (Vernon 2003).

■ An offense is a "lesser included offense" if "it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." TEX.CODE CRIM. PROC. ANN. art. 37.09(3) (Vernon 2006). A defendant is entitled to a lesser included offense instruction if (1) proof of the charged offense includes the proof required to establish the lesser included offense and (2) there is some evidence in the record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser offense. *Ferrel v. State,* 55 S.W.3d 586, 589 (Tex.Crim.App.2001). Such evidence must be directly germane to a lesser included offense before an instruction is warranted. *Bignall v. State,* 887 S.W.2d 21, 24 (Tex.Crim.App.1994). We must review all evidence presented at trial to make this determination. *Rousseau v. State,* 855 S.W.2d 666, 673 (Tex.Crim.App. 1993). If the evidence raises the issue of a lesser included offense, a jury charge must be given based on that evidence, "whether produced by the State or the defendant

and whether it be strong, weak, unimpeached, or contradicted." *Id.* at 672 (quoting *Bell v. State,* 693 S.W.2d 434, 442 (Tex.Crim.App.1985)).

Criminally negligent homicide is a lesser included offense of murder. *See Saunders v. State,* 840 S.W.2d 390, 391 (Tex.Crim.App.1992). Thus, we consider whether some evidence exists that appellant was guilty only of criminally negligent homicide. The key to criminal negligence is the failure of the actor to perceive the risk created by his conduct. *See Still v. State,* 709 S.W.2d 658, 660 (Tex.Crim.App. 1986); *Wong v. State,* 745 S.W.2d 563, 565 (Tex.App.-Waco 1988, no pet.). Simply because appellant did not intend the result does not automatically entitle him to a charge on criminal negligence. *See Wong,* 745 S.W.2d at 565. Rather, the difference between criminally negligent homicide and manslaughter is the culpable mental state of criminal negligence for the former and recklessness for the latter. *See Thomas v. State,* 699 S.W.2d 845, 849 (Tex.Crim.App. 1985). If the evidence shows that the defendant's awareness is such that he perceived the risk his conduct created, he is not entitled to a charge of criminally negligent homicide. *Id.* at 850. "Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another indicates a person who is aware of a risk created by that conduct and disregards the risk." *Id.* Such a person is "at least reckless." *Id.*

In his appellate brief, appellant argues that the following evidence raises negligent homicide:

Appellant testified that after becoming upset because his car was stolen, he was beaten by perceived complicitors to the theft and rescued by a friend who helped him leave the area. Before they could get away, Appellant noticed the men who had beaten him following them and asked his friend to [sic] pistol to frighten the men off. The friend handed Appellant the pistol, Appellant raised it in the air, was turning around and intent on putting it in his waist and leave. Before that could happen, one of the men who was at Appellant's side ran up and hit the gun in Appellant's hand, causing it to discharge. At the time, Appellant did not see the man coming, did not point the gun at him, did not intend to shoot or kill that person, did not intend to pull the trigger, did not have his finger on the trigger, did not feel how the man hit Appellant's hand and did not know that the man was shot.

The testimony upon which appellant relies does not show that he failed to perceive the risk of brandishing a loaded gun. In fact, appellant's testimony that he wanted the gun to "frighten the men off" shows that he either disregarded the risk or knew the risk of having a loaded gun. Appellant also indicated that he perceived the risk when, prior to shooting the complainant, appellant described his intent when he picked up the gun: "I just raised the gun up in the air for they can scare, they can get scared and run away. And they did." When appellant returned home from the shooting, the gun accidentally discharged in his apartment. Appellant also perceived the risk of having a loaded gun when he testified, "I was just looking at [the gun], and I had it in my hand and I don't know how it went off, I just grabbed it and it went off … I got scared of the gun, man. I just put it up."

Because appellant did not present evidence to show that he failed to perceive the risk created by his conduct, and the evidence shows that he did perceive and disregard that risk, the trial court did not

err in failing to give an instruction on criminally negligent homicide.

We overrule appellant's first issue.

### Involuntary Conduct

■ In his fourth issue, appellant argues that he received ineffective assistance of counsel because his attorney failed to request an instruction on involuntary conduct.

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. AMEND. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005). This right includes the right to reasonably effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *Ex parte Gonzales,* 945 S.W.2d 830, 835 (Tex.Crim.App.1997). To prove ineffective assistance of counsel, appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms and (2) the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland,* 466 U.S. at 688–92, 104 S.Ct. at 2064–67; *see also Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999). Appellant has the burden of proving his claim by a preponderance of the evidence. *Jackson v. State,* 973 S.W.2d 954, 956 (Tex. Crim.App.1998). We apply a strong presumption that trial counsel was competent. *See Thompson,* 9 S.W.3d at 813. We presume counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

■ Involuntary conduct is a defense to prosecution. *See* TEX. PEN.CODE ANN. § 6.01(a) (Vernon 2003) ("A person commits an offense only if he voluntarily engages in conduct including an act, an omission, or possession."). Upon a timely request, an accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense. *Hamel v. State,* 916 S.W.2d 491, 493 (Tex.Crim.App.1996); *Miller v. State,* 815 S.W.2d 582, 585 (Tex. Crim.App.1991). The evidence may come from any source, including the defendant. *See Miller,* 815 S.W.2d at 585. A defendant is entitled to a charge on the issue of the voluntariness of his acts when warranted by the evidence. *Brown v. State,* 955 S.W.2d 276, 279–80 (Tex.Crim.App.1997).

■ "When a person claims the involuntary-act defense he is conceding that his own body made the motion but denies responsibility for it." *Rogers v. State,* 105 S.W.3d 630, 639 n. 30 (Tex.Crim.App.2003) (citations omitted). "Voluntariness," within the meaning of section 6.01(a), refers only to one's own physical body movements. *Id.* at 638. "If those physical movements are the nonvolitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other nonvolitional impetus, that movement is not voluntary." *Id.* "[A]n instruction on voluntariness is necessary only if the defendant admits committing the act charged and seeks to absolve himself from criminal responsibility for engaging in the conduct." *Bell v. State,* 867 S.W.2d 958, 962 (Tex.App.-Waco 1994, no pet.).

Here, appellant did not admit to committing the act charged. Rather, appellant testified that the gun discharged even though he did not have his finger over the trigger. Appellant's testimony that he did not touch the trigger does not show that "he was the passive instrument of anoth-

er's act, *i.e.*, that, somehow, his finger had been made to exert the requisite [five-and-one-half] pounds of force[3] to squeeze the trigger and fire the gun." *See Rogers,* 105 S.W.3d at 640. Because he did not admit to committing the act charged, *i.e.*, pulling the trigger to discharge the gun, appellant was not entitled to an instruction on involuntary conduct. Thus, appellant's trial counsel was not deficient in failing to ask for an instruction on involuntary conduct.

We overrule appellant's fourth issue.[4]

### Conclusion

We affirm the judgment of the trial court.

3. Officer Richard Anderson testified that a person would have to exert five-and-one-half pounds to fire the gun. He also testified that the gun was functioning properly when he fired it.

4. In his second and third issues for review, appellant argues that the evidence that he committed a voluntary act is legally and factually insufficient. Whether appellant committed a voluntary act is a defense to prosecution and not an element of the offense. *See*

*Brown v. State,* 955 S.W.2d 276, 279–80 (Tex. Crim.App.1997). Therefore, appellant cannot attack "voluntariness" on legal and factual sufficiency grounds. *See LaSalle v. State,* 973 S.W.2d 467, 473 (Tex.App.-Beaumont 1998, pet. ref'd) ("Under either ... legal sufficiency review or a ... factual sufficiency review, the scope is limited to an examination of the record for proof of the essential elements of the offense for which the accused was convicted....").