

NUMBER 13-08-00666-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ABELINO CANTU, JR. A/K/A
AVELINO CANTU, JR.,                                     Appellant,

v.

THE STATE OF TEXAS,                                     Appellee.

On appeal from the 214th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

Before Justices Yañez, Garza, and Benavides
Memorandum Opinion by Justice Benavides

Avelino Cantu Jr. ("Cantu")[1] appeals his conviction for manslaughter of his son,

---

[1] The names Abelino Cantu, Jr. and Avelino Cantu, Jr. both appear in the record to represent the appellant in this case. For that reason, this case has been styled Abelino Cantu, Jr., a/k/a Avelino Cantu, Jr. v. The State of Texas.

Avelino Cantu III ("Avelino"). *See* TEX. PENAL CODE ANN. § 19.04 (Vernon 2003). After a jury trial on an indictment for murder, Cantu was found guilty of the lesser-included offense of manslaughter. *Id*. The jury assessed punishment at three years' confinement in the Texas Department of Criminal Justice-Institutional Division. *Id*. § 12.33 (Vernon Supp. 2010).

By two issues, Cantu argues that the trial court erred in denying his requested jury charge instructions on: (1) self-defense; and (2) the lesser-included offense of criminally negligent homicide. We affirm.

## I. BACKGROUND

On April 10, 2008, Cantu shot and killed his adult son, Avelino. On that morning, Avelino was engaged in an argument with his mother, Yolanda Cantu, and was told that he could no longer stay in the residence. Avelino then flew into a rage and overturned the kitchen table, threw a flowerpot, and threw Yolanda's cell phone.

When Cantu came home, he confronted his son about the argument, and Avelino threatened him with a knife. Once Avelino calmed down, Cantu, Yolanda and their grandchild left the home hoping that Avelino would soon leave the residence. Cantu testified that at that time, he was afraid for his life, so he retrieved a handgun from his workshop before he left.

Within a half hour, Cantu, Yolanda and their grandchild returned to the home and found that Avelino had not left. After waiting in the car for five to ten minutes while Yolanda went to retrieve some personal items, Cantu eventually went inside where Avelino threatened him again. According to Cantu's testimony, Avelino threatened to kill him. After several threats, Avelino then began to punch Cantu, and Cantu, thereafter, retreated

2

outside the home. Avelino caught up with him and continued the attack. Cantu testified that he thought Avelino had a weapon. Cantu fired one shot that struck Avelino in the chest and killed him.

Yolanda testified that after going outside, Cantu and Avelino were eventually separated and were on opposite sides of the driveway to their home when the shot was fired. Although Cantu agreed with Yolanda's statement on cross-examination, he had earlier testified that he was in fear for his life and that his son was "right on [him]." Cantu also testified that he intended to fire a shot into the ground, into a wall, or into Avelino's leg.

Cantu and his wife both testified that Avelino had a long history of violent and anti-social behavior. Cantu testified that Avelino had threatened him with a baseball bat and a knife on previous occasions, had choked one of his brothers, had chased Cantu's dog with an axe with the intent to kill the dog, had assaulted and threatened a homeless man, had threatened another inmate while in jail, and was a member of street and prison gangs.

At the close of evidence, defense counsel asked that the trial court include instructions on self-defense in the jury charge, noting that Cantu's entire trial strategy revolved around the concept of self-defense. The trial court denied the request, and further denied the request for an instruction on criminally negligent homicide. The jury found Cantu guilty of manslaughter, and this appeal ensued.

## II. DISCUSSION

### A. Self-Defense

By his first issue, Cantu argues that there was some evidence to support a finding of self-defense, and therefore, the jury should have been given an instruction on the affirmative defense. Whether or not this constituted error, we find that Cantu did not show

3

actual harm.

### 1. Applicable Law

"An accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense." *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). The accused's testimony alone may be sufficient to raise a defensive theory requiring a charge. *Id*. The failure to instruct the jury on self-defense when it is raised by the evidence is subject to harmless error analysis. *Id*. at 494. Consequently, we consider (1) whether the evidence, viewed in the light most favorable to Cantu, is sufficient to raise the issue of self-defense; and (2) whether failure to include the requested jury instructions constituted harmful error. *See id.*; *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).

In order to establish the affirmative defense of self defense with deadly force, a defendant must present some evidence that: (1) he would be justified in using force against the other under Texas Penal Code section 9.31; (2) a reasonable person in the actor's situation would not have retreated; and (3) he reasonably believed the deadly force was immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *See* TEX. PENAL CODE ANN. §§ 9.31(a), 9.32 (Vernon Supp. 2009).

The "apparent danger" doctrine allows a person to defend himself from apparent danger to the same extent as he would if the danger were real; therefore, no evidence is necessary to show that the aggressor was *actually* using or attempting to use deadly force. *See, e.g.*, *Semaire v. State*, 612 S.W.2d 528, 530 (Tex. Crim. App. 1980). However, the statutory requirement that the belief must be reasonable mitigates this doctrine because

4

it requires that a *reasonable* person would have believed there was a danger of death or serious bodily injury[2]; apparent danger is not judged solely by the accused's subjective perception. *See* TEX. PENAL CODE ANN. § 9.32; *Semaire,* 612 S.W.2d at 530.

If there was some evidence for each of these three elements, the trial court should have given a jury instruction on the defense of self-defense. If the trial court erred, "we must reverse the conviction if appellant suffered any actual harm by the omission of the defensive instruction." *Carmen v. State*, 276 S.W.3d 538, 546 (Tex. App.–Houston [1st Dist.] 2008, pet. ref'd). When conducting a harm analysis, a reviewing court may consider the following four factors: (1) the charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) arguments of counsel; and, (4) any other relevant information revealed by the record of the trial as a whole. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing *Bailey v. State*, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993)).

## 2. Error and Harm Analysis

Assuming, without deciding, that Cantu provided some evidence to support the elements necessary to establish his affirmative defense, we address the requirement that Cantu must demonstrate actual harm caused by the failure to give the instruction on self-defense. To demonstrate actual harm, Cantu should have analyzed the charge itself, the other evidence, the arguments of counsel or any other relevant factors that would show

---

[2] "Deadly force" means "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." TEX. PENAL CODE ANN. § 9.01(3) (Vernon 2003). "Serious bodily injury" is defined as any injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46) (Vernon 2003).

actual harm.  *See Hutch*, 922 S.W.2d at 171.  The State contends that Cantu failed to perform any harm analysis and therefore failed to demonstrate actual harm.  We agree. Cantu's only discussion of harm is contained in his reply brief, in which he asserted:

> It is clear from the entire record, from the voir dire, and throughout the presentation of evidence that the appellant's entire defense was that of self-defense.  By not granting the appellant's request  for the self-defense in the charge, the court greatly harmed the appellant's ability to defend himself at trial.  Therefore the actual harm test outlined in *Almanza* was met.

Cantu's bare assertion of harm fails to address the charge itself, any specific evidence, any specific arguments of counsel, or any other factors that would demonstrate actual harm. Accordingly, we conclude that he has failed to demonstrate that the trial court's error, if any, caused him actual harm.  *See Id*.  (requiring that the appellant must show some actual harm in order for a denial of a requested jury instruction to be reversible error); *see also* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").  For this reason, we overrule Cantu's first issue.

**B.     Criminally Negligent Homicide**

By his second issue, Cantu argues that the court erred in not instructing the jury on the lesser-included offense of criminally negligent homicide.  Again, we disagree.

### 1.     Applicable Law

As a matter of law, "[c]riminally negligent homicide is a lesser-included offense of murder."  *Trujillo v. State*, 227 S.W.3d 164, 168 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd) (citing *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992)).  After the determination has been made that a specific crime is a lesser-included offense of the crime charged against the accused, the accused is entitled to have the jury instructed on the

6

lesser offense so long as there is some evidence that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007).

> In this step of the analysis, anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. In other words, the evidence must establish the lesser included offense as a valid, rational alternative to the charged offense.

*Id*. (internal quotations omitted).

As opposed to the crime of murder, which requires a mental state of higher culpability, the crime of criminally negligent homicide requires only that the accused ought to have been aware of a substantial and unjustifiable risk presented by the circumstances. *Compare* TEX. PENAL CODE ANN. § 19.02 (Vernon 2003) (murder), *with id*. § 19.05 (criminally negligent homicide), *and id*. § 6.03(d) (culpable mental states). To constitute criminally negligent homicide, "[t]he risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id*. § 6.03(d). A charge of criminally negligent homicide, then, is only justified when the accused should have known the risk, but for whatever reason, failed to recognize it. "If the evidence shows that the defendant's awareness is such that he perceived the risk his conduct created, he is not entitled to a charge of criminally negligent homicide." *Trujillo*, 227 S.W.3d at 168 (citing *Thomas v. State*, 699 S.W.2d 845, 850 (Tex. Crim. App. 1985)).

### 2. Error Analysis

In this case, Cantu used a gun to cause Avelino's death. "Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury,

and that he points a gun at another indicates a person who is aware of a risk created by that conduct and disregards the risk." *Id*. This evidence does not establish that Cantu was unaware of the risk. *See id*.

In support of his second issue on appeal, Cantu points to his own testimony that "he fired a shot intending it to go into the ground, into a wall, or into [Avelino's] leg." This evidence could only be helpful in determining if the killing was intentional and does not lend any support to the requirement that Cantu was unaware of the dangers that surrounded his conduct. In fact, Cantu testified that he loaded the gun, he knew how to fire the gun, he had fired other guns in the past, and he intended to use it to protect his life—indicating not only knowledge of the risk, but also the expectation that he could exploit that risk in order to protect himself.

We find no evidence to support a jury instruction for criminally negligent homicide, and therefore, we overrule Cantu's second issue. Finding no error, we need not address whether failure to have the jury instructed on this point was harmful. *See* TEX. R. APP. P. 47.1.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's final judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
30th day of November, 2010.

8