**084·15**

NO._____

IN THE

COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 12 2015

Abel Acosta, Clerk

ON APPEAL FROM
179th DISTRICT COURT
HARRIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. 1402764
and
COURT OF APPEALS
for the
FIRST DISTRICT OF TEXAS
NO. 01-14-00145-CR

FILED IN
COURT OF CRIMINAL APPEALS

MAR 12 2015

Abel Acosta, Clerk

## PETITION FOR DISCRETIONARY REVIEW

## ROMELLE MONTE HAWKINS V. STATE

ROMELLE MONTE HAWKINS, APPELLANT
DARRINGTON UNIT
59 DARRINGTON RD.
ROSHARON, TX 77583

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

PROCEDURAL HISTORY AND PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

GROUND FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE FIRST COURT OF APPEALS ERRED IN
ITS REVIEW OF TRIAL COURT'S ABUSE OF DISCRETION
IN REFUSING A JURY CHARGE FOR THE LESSER-INCLUDED
OFFENSE OF CRIMINALLY NEGLIGENT HOMICIDE WHERE
THE RECORD SHOWS:(A) EVIDENCE ESTABLISHING THE
CHARGE AS A RATIONAL ALTERNATIVE, AND (B) WHERE
THE RECORD INDICATES THE JURY ASKED TRIAL COURT
(DURING DELIBERATIONS) IF THEY COULD FIND
LESSER OFFENSE INSTEAD OF MANSLAUGHTER.

QUESTION FOR REVIEW

IN AN ABUSE OF DISCRETION REVIEW REGARDING
INSTRUCTION ON A LESSER-INCLUDED OFFENSE,
IS IT PROPER FOR THE REVIEWING COURT TO
SUBSTITUTE ITS INTERPRETATION OF TESTIMONIAL
EVIDENCE FROM THE RECORD FOR THAT OF THE JURY'S
FIRST-HAND ASSESSMENT OF CREDIBILITY OF THE
WITNESS(ES) WHEN MAKING A DETERMINATION
OF THE LESSER OFFENSE OF NEGLIGENT HOMICIDE
AS A RATIONAL ALTERNATIVE TO MURDER?

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## PROCEDURAL HISTORY AND PARTIES

Appellant was charged with murder (CR at 9), pled not guilty and was tried by jury in the 179th District Court, Harris County; Honorable Judge Kristin Guiney presiding; trial counsel Victor Wisner, and prosecutors Alan Curry and Cara Burton. Appellant was found guilty of Manslaughter (RR 7:6) and sentenced to twenty-three years confinement in TDCJ-ID.

Timely notice of appeal was given and appellant counsel Deborah Summers filed the appeal with the First Court of Appeals, who Affirmed the conviction. Request for an extention of time was filed with this Court, and the deadline for filing this Petition set for March 6, 2015.

The Prosecuting Attorney for the State of Texas was forwarded a copy of this Petition as required.

## STATEMENT OF THE CASE

The sole issue presented on appeal regards trial court's denial of a lesser-included offense instruction on Negligent Homicide. Of the seven witnesses at trial, two testified that the Appellant had fired the shot(s) which killed the complainant. Evidence was also presented that Appellant had not intended the death of the complainant.

Trial counsel requested the lesser-included offense instruction on Negligent Homicide, but trial court denied the request. The jury acquitted Appellant of Murder, and during deliberations, requested from trial court, "Can the manslaughter term be reduced?" (CR at 217).

Appellant counsel raised the issue of abuse of discretion in trial court's denial of the request for lesser-included offense of negligent homicide, and the First Court of Appeals analyzed the claim applying the two-step test used in Texas reviewing courts. Cavazos v. State, 382 S.W.3d 377, 382 (Tex.Crim.App. 2012); Sweed v. State, 351 S.W.3d 63, 67 (Tex.Crim.App. 2011); Guzman v. State, 188 S.W.3d 185, 188 (Tex.Crim.App. 2006). Both the State and the First Court of Appeals agreed that the first prong was met--that criminally negligent homicide is a lesser-included offense to Murder. However, the court ruled that, in light of the evidence presented at trial, that criminally negligent homicide was not a rational alternative available to the jury for consideration, citing Hall v. State, 225 S.W.3d 524, 535-36 (Tex.Crim.App. 2007).

Appellant's argument is that the First Court of Appeals allowed the trial court's ruling to stand by interpreting the written record of testimony at trial, thereby negating the jury's first-hand assessment of the demeanor and credibility of the witnesses. The question from the jurors to trial court (on top of their acquital on the charge of murder), emphasizes that the jury did not believe Appellant possessed the requisite culpable mental state for Murder, and questioned whether he had the culpable mental state for Manslaughter.

Appellant argues that, given the wide latitude for the jury to weigh the evidence presented, that inclusion of the lesser-included offense was justified, and trial court erred in its exclusion.

ORAL ARGUMENT REQUESTED

iii.

# INDEX OF AUTHORITIES

**CASES**

BIGNALL V. STATE, 887 S.W.2D 21.............................1, 2
(Tex.Crim.App. 1994)

CAVAZOS V. STATE, 382 S.W.3d 377...........................iii, 1
(Tex.Crim.App. 2012)

FOREST V. STATE, 989 S.W.2d 365................................ 1
(Tex.Crim.App. 1999)

GUZMAN V. STATE, 188 S.W.3d 185............................iii, 1
(Tex.Crim.App. 2006)

HALL V. STATE, 225 S.W.3d 524.............................iii, 1
(Tex.Crim.App. 2007)

MONTGOMERY V. STATE, 369 S.W.3d 188........................... 3
(Tex.Crim.App. 2012)

SWEED V. STATE, 351 S.W.3d 63................................. 1
(Tex.Crim.App. 2011)

TRUJILLO V. STATE, 227 S.W.3d 164............................. 3
(Tex.App.--Houston [1st Dist.] 2006, pet. ref'd)


**STATUTES**

Tex. Penal Code Ann. § 19.05(a)(Vernon 2011)................... 2

## GROUND RESTATED

THE FIRST COURT OF APPEALS ERRED IN REVIEW OF TRIAL COURT'S ABUSE OF DISCRETION IN REFUSING A JURY CHARGE FOR THE LESSER-INCLUDED OFFENSE OF CRIMINALLY NEGLIGENT HOMICIDE WHERE THE RECORD SHOWS: (A) EVIDENCE ESTABLISHING THE CHARGE AS A RATIONAL ALTERNATIVE, AND (B) WHERE THE RECORD INDICATES THE JURY ASKED TRIAL COURT (DURING DELIBERATIONS) IF THEY COULD FIND FOR THE LESSER OFFENSE INSTEAD OF MANSLAUGHTER.

## SYNOPSIS OF THE FIRST COURT'S OPINION

The First Court applied "a two-step test to determine whether appellant was entitled to an instruction on a lesser included offense. Cavazos v. State, 382, S.W.3d 377, 382 (Tex.Crim.App. 2012); Sweed v. State, 351 S.W.3d 63, 67 (Tex.Crim.App. 2011); Guzman v. State, 188 S.W.3d 185, 188 (Tex.Crim.App. 2006)." Opinion at 6. The inquiry into the first prong--whether the defendant is entitled to the instruction--"is a question of law" which the Court concluded was met. Hall, at 536. Opinion at 7.

The second step "then requires that we determine whether some evidence in the record would have permitted the jury to rationally find that, if he was guilty, he was guilty only of the lesser-included offense." Hall, 536 and Opinion at 7. The Court then notes the following:

(a) that "[a]nything more than a scintilla of evidence may be sufficient to entitle the defendant to a lesser charge." Hall, at 536; Forest v. State, 989 S.W.2d 365, 367 (Tex.Crim.App. 1999).

(b) that "the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense." Id.

(c) that "it is not enough that the jury disbelieve crucial evidence pertaining to the greater offense..." Bignall v. State, 887 S.W.2d 21, 24 (Tex.Crim.App. 1994).

(d) and that "there must be some evidence directly germane to

1.

the lesser-included offense for the finder of fact to consider before a lesser-included offense instruction is warranted. Id.

The First Court then concluded that trial court did not err in denying Appellant's request regarding the lesser offense of criminally negligent homicide because "Appellant did not present evidence showing that he failed to perceive the risk created by his conduct, and the evidence shows that he did perceive and disregard that risk." Opinion at 12.

## SCINTILLA OF EVIDENCE

The State's central witness, Ms. Fallon, testified that there was no animosity between Petitioner and the complainant and that he would "not hurt someone he was with" (RR4 at 128, 135). She further testified that Petitioner said, "what the fuck happened" and was shaking after the fatal shot. (RR4 at 85, 96, 143-44). Evidence that the Petitioner's shooting and killing of the complainant was unintentional arises from the State's own witness, despite the fact that Ms. Fallon repeatedly stated she thought the shot was intentional. (RR4 at 79-80, 84-86, 89, 92-93, 95-96, 143). From the jury's acquittal of Petitioner on the charge of murder, it is apparent the trier of fact chose to reject Ms. Fallon's testimony regarding mens rea.

## VALID, RATIONAL ALTERNATIVE

A person commits the offense of criminally negligent homicide if he causes the death of an individual by criminal negligence. Tex. Penal Code Ann. § 19.05(a) (Vernon 2011). Ultimately, "[t]he key to criminal negligence is not the actor's being aware of a substantial risk and disregarding it, but rather it is a failure

2.

of the actor to perceive the risk at all" created by his conduct. Montgomery v. State, 369 S.W.3d 188, 193 (Tex.Crim.App. 2012); Trujillo v. State, 227 S.W.3d 164, 168 (Tex.App.--Houston [1st Dist.] 2006, pet. ref'd); Opinion at 9.

Presented at trial is the Petitioner's statement, as testified by Ms. Fallon ("what the fuck"), that provides evidence that he had not perceived the potential consequence of his action (the complainant stepping in front of the gun as he fired) though he certainly 'should have perceived the risk his conduct created. Trujillo at 168.

This level of the actor's perception of the risk, or the level of culpable mental state, finds basis within the record, and falls within the purview of the trier of facts. The Court of Appeals states that the fact that the actor did not "intend the result does not automatically entitle him to a charge of criminal negligence." The court further noted that "a defendant is not entitled to a charge of criminally negligent homicide if the evidence shows the defendant's awareness is such that he perceived the risk his conduct created." Opinion at 10 (citing Trujillo).

But evidence existed supporting both manslaughter and criminally negligent homicide, evidence on the trier of facts was in a position to cipher, having first-hand impression of the credibility of the testimony.

## THE JURY'S REJECTION OF CRUCIAL EVIDENCE

The jury acquitted Petitioner of Murder. In so doing, the jury rejected the State's theory and the contention of the State's central witness that there was an intent to murder the complainant. An during deliberations, the jury queried the Court whether they

3.

could convict Petitioner of a lesser charge. (CR at 217).
The factual basis for negligent homicide is the statement, or
excited utterance, of Petitioner just after the fatal shot, not
merely the rejection of crucial evidence.

**GERMANE EVIDENCE**

It bears repeating that the statement and reaction of the
Petitioner provided evidence of his culpable mental state at the
time of the complainant's death. This is further supported by
the revelation during cross-examination of the State's central
witness (Ms. Fallon) that there was no animosity between complainant
and Petitioner, not did he have the proclivity to hurt someone
he was with. (RR4 at 85, 96, 143-44).

### DID THE COURT OF APPEALS SUBSTITUTE ITS REVIEW OF THE TESTIMONIAL EVIDENCE FOR THAT OF THE JURY IN DECIDING WHETHER THE LESSER-INCLUDED OFFENSE CHARGE WAS WARRANTED?

It is Petitioner's contention that evidence existed to support
the lesser-included offense charge of criminally negligent homicide--
specifically the Petitioner's statement after the fatal shot.
Testimonial evidence would lend support to the charge of Manslaughter,
or even Murder. But that evidence is testimonial, subject to
the trier of fact--the jury, not trial court, and not the Court
of Appeals. The jury was free to choose whether the Petitioner
had the requisite mental state to justify a conviction or acquittal
as to murder. They acquitted. They had the option of deciding
whether the requisite mental state for Manslaughter was present,
and they reacted with the question to trial court as to whether
they could choose a lesser offense. It was not available to them,
not because there was no evidence to support the requisite mental

4.

state, but because it had been denied by trial court as a lesser-included offense.

All the jury needed to find Petitioner guilty of criminally negligent homicide is to believe the testimony regarding Hawkin's reaction just after the shot, and not believe the testimony of the other parties. The Court of Appeals disregards the options available to the jury, making an ex post facto determination based upon facts the jury had rejected.

## CONCLUSION

The trial court abused its discretion denying instruction on the lesser-included offense of criminally negligent homicide where there was evidence available to the jury to make a reasoned determination when weighing the testimonial evidence presented at trial. The First Court of Appeals erred in its review by rendering a decision based on the written record devoid of the first-hand assessment position of the jury in judging credibility.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Petitioner prays this Court give Petitioner's pleadings full consideration, despite the short-comings of a layman-at-law's petition, and Grant this request for discretionary review.

/S/ _Romello Hawkins_

5.

## INMATE DECLARATION

I, Romelle M. Hawkins, TDCJ-ID No. 1911528, being currently incarcerated at the Darrington Unit, Brazoria County, Texas, do hereby declare that a true and correct copy of the above and foregoing Petition for Discretionary Review has been sent to the following addresses, first-class postage prepaid, and placed in the USPS authorized mail receptacle on this the __5th__ day of __March__, 2015:

Court of Criminal Appeals
Supreme Court Building
PO Box 12308, Capitol Station
Austin, TX 78711

State Prosecuting Attorney
PO Box 12405, Capitol Station
Austin, TX 78711

/s/ _Romelle Hawkins_

Opinion issued December 4, 2014



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00145-CR

———————————

## ROMELLE MONTE HAWKINS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 179th District Court
Harris County, Texas
Trial Court Case No. 1402764

## MEMORANDUM OPINION

Appellant Romelle Monte Hawkins pleaded not guilty to the charged offense

of murder.[1]  A jury found Appellant guilty of the lesser-included offense of

---

[1]  *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 2011).

manslaughter[2] and assessed Appellant's punishment at 23 years in prison. In one issue on appeal, Appellant asserts that the trial court erred by refusing to instruct the jury on the lesser-included offense of criminally negligent homicide.

We affirm.

## Background

On April 8, 2012, at around 11:00 p.m., Fallon Kiser went to a bar to meet friends, including her date, Jerold Griffin, and her best friend, Katherine Brownlow-Stewart, the complainant in this case. Appellant was also at the bar. He was Katherine's date.

The group stayed at the bar for a while and then went to a second club. Fallon and Katherine were at the second club when, around 3:00 a.m., Jerold decided that he wanted to leave. Although she wanted to stay at the club, Fallon decided to leave with her date.

Fallon and Jerold rode in the backseat of Jerold's vehicle, a white SUV. Jerold's cousin, Devline Smallwood, was driving, and another acquaintance, Cedric Jackson, rode in the front passenger seat. During the ride, Fallon and Jerold started to argue. They both had been drinking alcohol that night, and Jerold was drunk.

_____

[2] See id. § 19.04 (Vernon 2011).

2

Fallon got out of the vehicle and began walking along the road, which was in an isolated area. Devline drove the SUV slowly along the road to keep pace with Fallon. The men encouraged Fallon to get back in the vehicle, but she would not comply. Jerold got out of the SUV and began walking with Fallon trying to convince her to get back in the vehicle. The two continued to argue as they walked.

Fallon called Katherine to come pick her up. Katherine arrived shortly after Fallon called her. Katherine was driving her black SUV. Appellant was in the front passenger seat.

Fallon got into the backseat of Katherine's vehicle. Katherine and Jerold began arguing, and Jerold walked toward Katherine's SUV in what Fallon later described as an aggressive manner. Fallon saw Katherine reach under her driver's seat to grab a gun, which Fallon knew Katherine kept in her vehicle, but Katherine could not locate the weapon.

As Jerold approached her SUV, Katherine opened her door, hitting Jerold in the face. Katherine then got out of the vehicle and began hitting Jerold. Fallon also got out of the SUV and went to assist Katherine in the physical altercation with Jerold. The two women engaged in a physical fight with Jerold for about 10 to 15 minutes.

The women were winning the fight when Devline approached to break it up. He grabbed Jerold around the waist and tried to pull him away.

At this point, the group was near the driver's side of Katherine's SUV. The driver's side door and window were open. Appellant had never gotten out of Katherine's vehicle and remained seated in the front passenger's seat.

Without warning, the group heard a gunshot. It was Appellant; he had fired a revolver from inside Katherine's SUV. Katherine told Fallon to "get down." The two women ducked down by the vehicle. Jerold and Devline ran away. Cedric, who was further away, hid in the bushes. Ten to fifteen seconds passed. Appellant fired the gun a second time. That shot hit Jerold in the arm as he ran away. Some time passed, and Katherine and Fallon thought it was safe. Katherine stood up and went to get in the driver's side of her vehicle. About five seconds after she stood up, Appellant fired the gun a third time, shooting Katherine in the head. Katherine fell into Fallon's arms, and they both fell to the ground.

Fallon looked at Appellant and saw him holding the gun. He was shaking. Fallon had heard Appellant say, "What the fuck happened?"

Fallon begged Appellant to help Katherine. Instead, Appellant got into the driver's seat of Katherine's vehicle and drove off. The police and paramedics were called to the scene. However, Katherine died from the gunshot wound to her head.

4

Fallon told the police that Appellant had shot Katherine and Jerold. Cedric identified Appellant as the person he saw driving away from the scene.

Later that day, Appellant went to a police station to inquire about Katherine. Appellant was taken into custody, and he agreed to be interviewed. During the video-taped interview, Appellant denied being at the scene and firing the gun.

Appellant was indicted for the offense of murder. During trial, Fallon testified in detail to the events occurring before, during, and after the shooting. She stated that Appellant was the person who shot Katherine. Fallon testified that, when Katherine was shot, she had seen Appellant aiming the gun at Katherine's head. She stated that the shots had not been fired rapidly; rather, appreciable time had elapsed between each of the three shots. Fallon testified that Katherine had been standing upright for five seconds trying to get into her vehicle when Appellant shot her.

Cedric also testified. He stated that, although he did not see who had fired the shots, he saw Appellant drive away after the shooting. The investigating police officers testified at trial, and the video-taped interview with Appellant was admitted into evidence. The State further showed, through forensic evidence, that Appellant had tested positive for gun residue on both his hands and his clothing. The defense did not present any evidence.

At the charge conference, the defense requested that the jury be instructed on the lesser-included offenses of manslaughter and criminally negligent homicide. The trial court granted the request to instruct the jury on the lesser-included offense of manslaughter, but denied the request to instruct the jury on the offense of criminally negligent homicide.

When it returned its verdict, the jury found Appellant guilty of the offense of manslaughter. Appellant pleaded true to an enhancement allegation found in the indictment, indicating that he had previously been convicted of the felony offense of felon in possession of a firearm. The jury assessed Appellant's punishment at 23 years in prison.

This appeal followed. In one issue, Appellant asserts that the trial court erred in denying his request to instruct the jury on the lesser-included offense of criminally negligent homicide.

## Lesser-Included Offense Instruction

### A. Standard of Review

We apply a two-step test to determine whether appellant was entitled to an instruction on a lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012); *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011); *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006). We first determine whether criminally negligent homicide is a lesser-included offense of

murder by comparing the statutory elements of the greater offense and any descriptive averments in the indictment with the statutory elements of the potential lesser-included offense. *Sweed*, 351 S.W.3d at 68; *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007). This inquiry is a question of law. *Hall*, 225 S.W.3d at 535.

If this threshold is met, the second step then requires that we determine whether some evidence in the record would have permitted the jury to rationally find that, if he was guilty, the defendant was guilty only of the lesser-included offense. *Id.* at 536; *Guzman*, 188 S.W.3d at 188–89; *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge, but the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense. *Hall*, 225 S.W.3d at 536; *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999). Although the threshold showing required for an instruction on a lesser-included offense is low, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before a lesser-included offense instruction is warranted. *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

**B. Analysis**

Here, the State does not dispute that criminally negligent homicide is a lesser-included offense of murder. *See Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992) (holding that negligent homicide is a lesser-included offense of murder). Thus, as briefed, the dispute in this case centers on whether there is some evidence from which the jury could have rationally found that, if Appellant was guilty, he was guilty only of the lesser offense of criminally negligent homicide. At this step of the analysis, "the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense." *Hall*, 225 S.W.3d at 536.

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (Vernon 2011). A person commits manslaughter if he recklessly causes the death of another. *See id.* § 19.04 (Vernon 2011). A person commits the offense of criminally negligent homicide if he causes the death of an individual by criminal negligence. *Id.* § 19.05(a) (Vernon 2011).

The essential difference between murder, manslaughter, and criminally negligent homicide is the culpable mental state required to establish each offense.

8

*See Thomas v. State*, 699 S.W.2d 845, 849 (Tex. Crim. App. 1985). The Penal

Code defines the relevant culpable mental states as follows:

> (a) A person acts intentionally, or with intent, with respect to . . . his conduct when it is his conscious objective or desire to . . . cause the result.
>
> (b) A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> (c) A person acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the . . . result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.
>
> (d) A person acts with criminal negligence, or is criminally negligent, with respect to . . . the result of his conduct when he ought to be aware of a substantial and unjustifiable risk . . . or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(a)–(d) (Vernon 2011).

"The key to criminal negligence is not the actor's being aware of a

substantial risk and disregarding it, but rather it is the failure of the actor to

perceive the risk at all" created by his conduct. *Montgomery v. State*, 369 S.W.3d

188, 193 (Tex. Crim. App. 2012); *Trujillo v. State*, 227 S.W.3d 164, 168 (Tex.

App.—Houston [1st Dist.] 2006, pet. ref'd). Evidence showing that a defendant

did not intend the result does not automatically entitle him to a charge on criminal negligence. *See Trujillo*, 227 S.W.3d at 168. "Rather, the difference between criminally negligent homicide and manslaughter is the culpable mental state of criminal negligence for the former and recklessness for the latter." *Id.* A defendant is not entitled to a charge of criminally negligent homicide if the evidence shows that the defendant's awareness is such that he perceived the risk his conduct created. *Id.*

In support of his assertion that the jury should have been instructed on criminally negligent homicide, Appellant asserts as follows in his appellate brief:

> There was substantial evidence that the shooting and killing of the complainant was unintentional and that the Appellant was trying to break up the melee that had started in front of him. Ms. Fallon testified that [Jerold] was getting more deadly and more aggressive and she would have pulled a gun on him that night if she had one. The fight had already lasted 10-15 minutes. Ms. Fallon admitted under cross examination that there was no friction between the complainant and the Appellant and that the Appellant would "not hurt someone he was with." She further admitted that when the complainant was shot and killed, the Appellant said, "What the fuck happened" and was shaking. . . . There was further evidence that [Appellant's] eyesight was not good and the lighting conditions were only good.

(Record citations omitted.)

While it may show that he did not intend to kill Katherine, the evidence cited by Appellant does not necessarily show that he failed to perceive the risk of pointing and firing a gun in the direction of four people, standing nearby him. *See*

10

*Trujillo v. State*, 227 S.W.3d at 168. This is particularly true when the cited evidence is viewed in the context of the other evidence in the record. *See Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (concluding that appellant's statement he did not intend to hit victim not evidence he is guilty only of lesser included offense, particularly given the other evidence in the record that he intended to kill victim).

The evidence showed that Appellant fired the gun three times with a significant pause between each shot. The second shot hit Jerold in the arm. A sufficient amount of time passed, which led Katherine and Fallon to think that it was safe to stand up. After Katherine stood up, another five seconds passed. Appellant then shot her as she tried to get into her own vehicle in which Appellant sat. Fallon testified that she saw Appellant aim the gun at Katherine's head.

Even if the evidence could be viewed (1) as showing that Appellant was trying to break up the fight between the two women and Jerold by frightening the group or (2) as showing that Appellant was shooting at Jerold to protect the women, such evidence does not raise a scintilla of evidence that Appellant did not perceive the risk his conduct created. To the contrary, viewing the evidence in such a manner would show that Appellant disregarded the risk, knew the risk of firing a gun, or was choosing to exploit that risk. *See Trujillo*, 227 S.W.3d at 168 (concluding that brandishing a loaded gun to frighten people indicates awareness

11

of a risk posed by a loaded gun); *see also Jackson v. State*, 248 S.W.3d 369, 372 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding that drawing handgun from pocket in response to a threat does not alone raise an inference that appellant was unaware of the risk posed by that conduct; instead, it indicates that the actor was aware of the risk posed by the weapon and was choosing to exploit that risk).

Because Appellant did not present evidence showing that he failed to perceive the risk created by his conduct, and the evidence shows that he did perceive and disregard that risk, the trial court did not err by denying Appellant's request to instruct the jury on the offense of criminally negligent homicide. *See Trujillo*, 227 S.W.3d at 168–69. We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).

12



# JUDGMENT

## Court of Appeals

## First District of Texas

NO. 01-14-00145-CR

ROMELLE MONTE HAWKINS, Appellant

V.

THE STATE OF TEXAS, Appellee

Appeal from the 179th District Court of Harris County.   (Tr. Ct. No. 1402764).

This case is an appeal from the final judgment signed by the trial court on February 10, 2014.  After submitting the case on the appellate record and the arguments properly raised by the parties, the Court holds that the trial court's judgment contains no reversible error.  Accordingly, the Court **affirms** the trial court's judgment.

The Court **orders** that this decision be certified below for observance.

Judgment rendered December 4, 2014.

Panel consists of Justices Keyes, Higley, and Brown.  Opinion delivered by Justice Higley.

RM HAWKINS #1911528
BRIDABRINGTON RD
ROSH AREON, TE 77583

Court of Criminal Appeals
Supreme Court BLDG
PO Box 12308, Capitol Station
AUSTON, TE 78711